No. 25-1887

(8:24-cv-03198-TDC)

_____

In The
**United States Court of Appeals**
For the Fourth Circuit

_____

ALLISON BROWN,

*Plaintiff-Appellant*,

v.

WASHINGTON UNIVERSITY, Et al.,

*Defendants-Appellees.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

_____

**INFORMAL BRIEF OF APPELLANT**

_____

Allison Brown
6405 Chew Road
Upper Marlboro, MD 20772
E-mail: asb151@georgetown.edu

# TABLE OF CONTENTS

Table of Cases and Authorities ………………………………..………1-2

Statement of Subject Matter and Appellate Jurisdiction ………………………….. ...3

Statement of Case………………………………………………………………..… 4

Statement of Issue Presented for Review ……………………………………… 5

Summary of Argument…………………………………………………………..7

Argument …………………………………………………………………………..7

I.  The District Court Erred in Not Recognizing Plaintiff as Pro-Se and Applying Pro-Se Pleading Standards

II.  The District Court Erred in Not Recognizing: 1) WashU as the Proper Legal Entity and 2) WashU Contacts in Determining Personal Jurisdiction under both Maryland Long Arm Statute and under *UMG Recordings Inc. v. Kurbanov*, 963 F.3d 344, 352 (4th Cir. 2020).

III.  The District Court Erred in Finding that Plaintiff Provided No Evidence That Defendants Reached into Maryland to Solicit or Initiate Business or Caused Tortious Injury Under Maryland Long Arm Statute § 6-103(b)(3) and § 6-103(b)(4)

IV.  The District Court Erred in Not Considering Defendants in-person contact with Plaintiff by adding the language "while in Maryland" when it is not part of the 6th factor under *UMG Recordings Inc. v. Kurbanov*, 963 F.3d 344, 352 (4th Cir. 2020).

V.  The District Court Erred in Finding that There Were No Allegations That Any Relevant Contract Was Interfered with and/or Expected to be Performed in Maryland Under Maryland Long Arm Statute § 6-103(b)(6)

VI.  The District Court Erred in Finding that Defendants' Tortious Acts in Maryland Did Not Meet the "Effects Test" as stated in *Consulting Engineers Corp. v. Geometric Ltd*. 561 F.3d 273 (4th Cir. 2009)

VII.  The District Court Erred in Finding that Plaintiff's Move to Missouri was Unilateral, that Plaintiff's Suspension Was Limited to Defendant Campus Only, and that the Vast Majority of the Defendants /WashU Conduct Underlying Brown's Claims Occurred in Missouri and Not Maryland

VIII.   The District Court Correctly Found Evidence of a Conspiracy, and the Conspiracy Should Stand Despite the District Court's Error in Finding No Personal Jurisdiction

IX.     The District Court Erred in Not Allowing Jurisdictional Discovery

Conclusion …………………………………………………………… 33

Statement Regarding Oral Argument…………………………………… 33

Appendix A…………………………………………………………… 34

Appendix B…………………………………………………………… 37

Appendix C…………………………………………………………… 38

# Table of Cases and Authorities

## Cases

*ALS Scans, Inc. v Digital Service Consultants, Inc.*, 293 F.3d 707 (4th Cir. 2002)

*Cassell v. Loyola Univ.*, 294 F. Supp. 622, 624 (E. D. Tenn. 1968)

*Consulting Engineers Corp. v. Geometric Ltd*. is 561 F.3d 273 (4th Cir. 2009)

*Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners*, 229 F.3d 448 (4th Cir. 2000)

*Fields v. Sickle Cell Diseases Ass'n of Am., Inc.*, 376 F. Supp. 3d 647, 650, 652-654 (E.D.N.C. 2018)

*Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351(2021)**.**

*Gehling v. St. George's Sch. of Med.*, 773 F2d 539, 541 (3d Cir. 1985),

*Grayson v. Anderson*, 816 F.3d 262 , 266 (Mar 7, 2016)

*Harnett v. Duquesne University*, 897 F. Supp. 920 (D. Md. 1995)

*Helicopteros Nacionales v. Hall*, 466 U.S. 408 (1984)

*Khalil v. Chatham Coll.*, 391 F. Supp. 588 (S.D. Tex. 2005)

*King v. Rubenstein,* 825 F.3d 206, 214 (4th Cir. 2016)

*Martinez v. N. Ariz. Univ. ("NAU")*, 553 F. Supp. 3d 908, (D.N.M. 2021)

*Perdue Foods LLC*, 814 F. 3d 185, 189 (4th Cir. 2016)

*Ramirez-Fort v Marshall*, 456 F. Supp. 3d 361, 369 (D.P.R. 2020)

*Scherer v. Curators of Univ. of Missouri*, 152 F. supp. 2d 1278, 1279-80, 1284-85 (D. Kan. 2001)

*Spencer v. Earley*, 278 F. App'x 254, 259-60 (4th Cir. 2008)

1

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 507 (2002)

*United States v. Brown*, 797 F. App'x 85, 89 (4th Cir. 2019)

*Vilchis v. Miami Univ. of Ohio*, 99 F. App'x 743, 744 (7th Cir. 2004)

*Walden v. Fiore*, 571 U.S. 277 (2014)


**Statutes**

28 U.S.C. § 1291

28 U.S.C. §1331

28 U.S.C. § 1332 (a)(2)

28 U.S.C. § 1367

28 U.S.C. § 1391(b)(2)

Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)

## JURISDICTIONAL STATEMENT

Subject matter jurisdiction was conferred on the District Court over Counts I - Title VI, Count II - Title VII, Count III - Section 1981, and Count IX - Section 1985, Count X - Title IX, Count XI - the 5th and 14th Amendment, and Count XII - Section 1983, pursuant to 28 U.S.C. §1331, federal question jurisdiction, and pursuant to 28 U.S.C. § 1332 (a)(2), diversity jurisdiction, as there exists complete diversity of citizenship between the Plaintiff and Defendants and the amount in controversy exceeds $75,000.

Venue is proper in the District Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to these claims occurred within the State of Maryland, and thus, the 4th Circuit, including but not limited to: 1) Defendants' contracting and drafting for a release of all claims and non-disparagement agreement to bind Maryland residents and be enforced in the state of Maryland, 2) Defendants' discriminatory and retaliatory suspension and subsequent constructive eviction of Plaintiff from Missouri, 3) the revocation of Plaintiff's scholarship after Defendant both *directed* and *knew* Plaintiff to have moved to Maryland to complete her degree from Defendants, and 4) Defendant's interference with Plaintiff's employment contracts to be performed in the state of Maryland using Maryland property.

The District Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 regarding the following state common law claims: defamation, libel, slander, breach of contract, bad-faith negotiation, fraud, fraudulent misrepresentation, negligence, tortious interference, and intentional infliction of emotional distress.

Jurisdiction is conferred on this court through 28 U.S.C. § 1291, as this informal brief and action follows an appeal from a final judgement of the District Court, entered on August 1st, 2025 by the District Court of Maryland at Greenbelt.

## STATEMENT OF CASE

Plaintiff hereby incorporates in its entirety and by reference Plaintiff's previous arguments and the record contained in the District Court of Maryland filings: including but not limited to: Plaintiff's original November 11, 2024 complaint (ECF Document 4), Plaintiff's Amended Complaint (ECF Document 48), Plaintiff's Memorandum in Support of Its Opposition to Defendants Motion to Dismiss (ECF Document 39), and Plaintiff's Reply (ECF Document 58.)

Defendants, Washington University et al, through their myriad discriminatory and retaliatory actions have purposefully availed themselves to the state of Maryland by: 1) threatening Plaintiff, a Black female Maryland resident, with state action and arrest in Missouri after complaining of race and sex discrimination in connection with her employment and prior, as a student, 2)

4

demanding through contractual obligation and release that Plaintiff leave WashU and finish her degree elsewhere, 3) interfering with contracts to be performed in the state of Maryland after Plaintiff acceded to Defendants demands to leave Missouri, 4) negotiating with Plaintiff to give up her and her Maryland family members rights to bring claims against Defendants for their egregious acts against Plaintiff, and 5) Plaintiff's study and research arising out of AND **relating to** the billion dollars of research contracts Defendant WashU has with several Maryland entities. Therefore, Maryland's exercise of personal jurisdiction over Defendants is constitutionally reasonable, as it does not offend notions of fair play and substantial justice under the due process clause of the 14th Amendment.

Accordingly, Plaintiff requests that this Court find that Maryland has personal jurisdiction over Defendants so that Plaintiff, a Maryland resident, may bring her claims safely in the Federal District Court of Maryland in Greenbelt.

### STATEMENT OF ISSUE PRESENTED FOR REVIEW

The District Court of Maryland held that personal jurisdiction could not be found over WashU because Plaintiff's arguments regarding Defendants' multitude of contacts did not satisfy general nor specific personal jurisdiction. The District Court erred in several ways, including but not limited to: 1) utilizing the incorrect standard for a pro-se litigant; 2) not recognizing: 1) WashU as the Proper Legal

5

Entity and 2) WashU Contacts in Determining Personal Jurisdiction under both Maryland Long Arm Statute and under *UMG Recordings Inc. v. Kurbanov*, 963 F.3d 344, 352 (4th Cir. 2020)., 3) finding that plaintiff provided no evidence that Defendants reached into Maryland to solicit or initiate business or caused tortious injury under Maryland Long Arm Statute § 6-103(b)(3) and § 6-103(b)(4), 4) not considering Defendants' in-person contact with Plaintiff by adding the language "while in Maryland" when it is not part of the 6th factor under *UMG Recordings Inc. v. Kurbanov*, 963 F.3d 344, 352 (4th Cir. 2020)., 5) finding that there were no allegations that any relevant contract was interfered with and/or expected to be performed in Maryland under Maryland Long Arm Statute § 6-103(b)(6), 6) finding that Defendants' tortious acts in Maryland did not meet the "Effects Test" as stated in *Consulting Engineers Corp. v. Geometric Ltd*. 561 F.3d 273 (4th Cir. 2009) 7) finding that Plaintiff's move to Maryland was unilateral, limited to Defendant Campus only, and that the vast majority of the Defendants/WashU's conduct underlying Plaintiff's claims occurred in Missouri, and not Maryland 8) disposing of Defendants' robust conspiracy after not finding personal jurisdiction, and 9) not granting jurisdictional discovery before dismissing Plaintiff's claims for lack of personal jurisdiction (Memo Op. at 13).

## SUMMARY OF ARGUMENT

Plaintiff requests relief from the District Court dismissal of her Complaint for lack of personal jurisdiction because Defendants have purposefully availed themselves to the state of Maryland through their brokering of agreements, interfering with contracts to be performed in the state of Maryland, causing tortious injury in the state of Maryland, and requiring Plaintiff to relocate to the state of Maryland for her safety under threat of arrest by Defendants.

Plaintiff respectfully requests that this case is remanded to the District Court of Maryland at Greenbelt due to her indigent status (she is currently on Maryland issued food-stamps) and inability to travel to Missouri to litigate these claims against a billion-dollar institution who has intentionally and foreseeably caused her impoverishment through their myriad discriminatory and retaliatory actions for complaining of race and sex discrimination in connection with her education and employment at Defendant University.

## I. The District Court Erred in Not Recognizing Plaintiff as Pro-Se and Applying Pro-Se Pleading Standards to Plaintiff's Claims

"[F]ederal courts are obliged to liberally construe filings by pro se litigants." *United States v. Brown*, 797 F. App'x 85, 89 (4th Cir. 2019) (citing *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)).

Accordingly, the District Court erred when they did not apply the liberal construction standard to Plaintiff's filings. Plaintiff is not admitted to the bar in any

7

jurisdiction. Yet, the District Court misconstrued and erred in failing to evaluate several of Plaintiff's arguments liberally that would give rise to jurisdiction, including but not limited to the characterization of the assertion that Plaintiff's relocation to Maryland after being threatened by Defendants with arrest as "unilateral" when **Defendants prohibited her from attending any on-campus <u>and/or</u> off-campus activities, constructively evicted her from her apartment, and botched, misplaced and doctored Plaintiff's exhibits in order to: 1) delay the Student Conduct Board Hearing (SCBH) and 2) ensure the requisite conditions for Plaintiff's inevitable arrest due to the arbitrary and indefinite terms of Plaintiff's suspension.** (Opp'n, 7, par. 1)

Further, a pro se litigant's pleadings are held to "less stringent standards than formal pleadings drafted by lawyers[.]" *Haines*, 404 U.S. at 520-21. "Dismissal of a pro se complaint for failure to state a valid claim is therefore only appropriate when, after applying this liberal construction, it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Spencer v. Earley*, 278 F. App'x 254, 259-60 (4th Cir. 2008) (emphasis in original) (quoting *Haines v. Kerner*, 404 U.S. 519, 521, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)). The District Court's dismissal of Plaintiff's complaint for lack of personal jurisdiction effectively dismissed Plaintiff's claims altogether, because Plaintiff seriously fears arrest, bodily harm, injury, and death if required to litigate

8

her claims in Missouri – a jurisdiction that Defendants constructively expelled her from upon threatening Plaintiff with arrest after she complained of race and sex discrimination and brokering an agreement that ordered Plaintiff to complete her law degree elsewhere, and bound her family members, heirs, and successors in the state of Maryland. Further, the District Court's Memorandum Opinion did not apply any of these liberal pleading standards to the case at hand, despite Plaintiff being pro-se and raising civil rights issues. Accordingly, Plaintiff's claims should not be dismissed for lack of personal jurisdiction or for failure to state a claim.

**II. The District Court Erred in Not Recognizing: 1) WashU as the Proper Legal Entity and 2) WashU Contacts in Determining Personal Jurisdiction under both Maryland Long Arm Statute and under *UMG Recordings Inc. v. Kurbanov*, 963 F.3d 344, 352 (4th Cir. 2020).**

> **1. The District Court Erred in Not Recognizing WashU as the Proper Legal Entity in this action.**

Washington University, EIN No. 43-0653611 (hereinafter "WashU") is a research university located in St. Louis, Missouri that provides students, including Plaintiff, with numerous opportunities to study and engage in research, even offering paid research positions across various disciplines including humanities, social sciences, arts, medical and STEM fields. It is commonly referred to as Washington University in St. Louis, comprises of nine schools, and a vast array of departments with tremendous overlap.

9

For example, Plaintiff was awarded the Emerging Changemaker Award by the WashU Olin School of Business while at WashU even though she was a student at the WashU School of Law. Further, Defendant Davis is both the William M. Van Cleve Professor in the School of Law and Professor of Organizational Behavior in Olin Business School.  Thus, the study and research conducted in the various schools are inextricably intertwined and all fall under one university, WashU.

All research funding, wages, taxes, benefits, tuition statements, student loan interest statements, health insurance are under WashU and are reported under EIN No. 43-0653611. Both Plaintiff **and** all of the Defendants are WashU employees, and most of the Defendants work for WashU under the School of Law.

Thus, WashU is the proper entity to consider when determining jurisdiction, not the WashU School of Law, since WashU School of Law is not even a legal entity and therefore, non-jural.  (Plaintiff's Motion to Dismiss Footnote 1). *Martinez v. N. Ariz. Univ. ("NAU")*, 553 F. Supp. 3d 908, (D.N.M. 2021)  (Court finds that NAU is a non-jural entity incapable of being sued and that the Court lacks personal jurisdiction over NAU.)  Therefore, WashU is the appropriate Defendant and <u>*all*</u> WashU contacts are relevant in determining jurisdiction.

> **2.  The District Court Erred in Solely Considering "WashU School of Law" Maryland Contacts in Determining Jurisdiction.**

10

The District Court correctly noted that Plaintiff alleged that WashU receives "billions of dollars" in funding and contracts from Maryland universities and Maryland-based government agencies such as NIH and NASA, and that it has dual degree programs with four Maryland Universities.  Opp'n at 19.  Plaintiff submitted several online documents evidencing the same in her Amended Complaint and Pleadings.

However, instead of the District Court acknowledging WashU's substantial Maryland business, the District Court failed to acknowledge the landmark Supreme Court case, and said that this substantial business cannot support a finding of personal jurisdiction because "Brown has not provided any basis to establish the second prong, that her claims arose out of these general contacts, where none of these contacts have anything to do with WashU Law School general or any program in which she participated specifically." (Memo. Op. at 17)

In *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351 (2021), the Supreme Court found that state courts could exercise specific jurisdiction over an auto manufacturer in products-liability suits stemming from car accidents that injured state residents although the vehicles were designed and manufactured elsewhere and were sold outside the forum states. The Defendant, Ford, unsuccessfully argued that the state court at issue had no personal jurisdiction

11

over Ford because Ford had not designed, manufactured, or sold in the State the
particular vehicle involved in the accident. Ford had substantial business in those
states and had actively sought to market its cars in the same state that it argued had
no jurisdiction. **Neither the State Supreme Court nor the Supreme Court
agreed with Ford's argument.**

The Supreme Court found that **<u>a car is a car</u>**, and that there is no
requirement that the particular car in question in the claim satisfy jurisdictional
requirements so long as the Defendant, Ford, generally sold and marketed cars
there. The Supreme Court did not require that the Plaintiff own several cars, such
as a car dealer, or a car service requiring multiple vehicles. The Supreme Court did
not compare the car owned by the Plaintiff to the cars owned by car dealers or car
services requiring multiple vehicles in the state. Instead, the Supreme Court found
that it was sufficient that the plaintiff owned a single car and was able to sue
Defendant for that car's malfunction because the Defendant sold cars in that state.

Plaintiff, Allison Brown, is a Black woman, resident of Maryland, former
student, and employee (**note: she has never resigned, nor received a termination
letter - See ECF 57-1, 57-2** ) at WashU under the School of Law. While studying
at WashU, she studied and conducted research and was paid $1000 by WashU for
such research and encountered (among race and sex discrimination and other torts)

12

a "research malfunction." While her research does not have the monetary value of newsworthy NIH or NASA contracts, it is still research and subjects Defendants to personal jurisdiction in Maryland because WashU provides funding of research to numerous Maryland entities and individuals – including Plaintiff. The District Court erred in failing to find that **research is research** and considering all of WashU's contacts with the state of Maryland.[1]

**Thus, the District Court of Maryland erred, and should have considered** ***all*** **of WashU study and research contacts with Maryland in determining whether or not personal jurisdiction. Plaintiff's claims did not have to "arise out of" these general contacts, the fact that they were "related to" these general contacts was sufficient.** (Bold added for emphasis.)

The cases cited by the District Court of Maryland (such as *Perdue Foods LLC*, 814 F. 3d 185, 189 (4th Cir. 2016), *Gehling v. St. George's Sch. of Med.*, 773

---

[1] Put another way, if NIH had a "research malfunction" related to a WashU contract, WashU should not be surprised if NIH sued WashU in Maryland, not Missouri. "When a corporation has continuously and deliberately exploited [a State's] market, it must reasonably anticipate being hauled into [that State's] court[s] to defend actions based on products causing injury there." *Montana*, 592 US at 10. For example, when NIH brought its fraud claim against a Professor residing in New York State, the District Court of Maryland, and a Maryland grand jury indicted the professor. Appendix C. Similarly, WashU should expect that NIH would bring claims against WashU in Maryland, not Missouri. Plaintiff should be able to do the same.

F2d 539, 541 (3d Cir. 1985), *Ramirez-Fort v Marshall*, 456 F. Supp. 3d 361, 369

(D.P.R. 2020) are not binding precedent because not only are two of those cases

from differing circuits, but the Supreme Court in *Ford Motor Co. v. Montana*

*Eighth Judicial District Court*, 592 U.S.  at 8 established different and binding

precedent, altered the legal landscape, and supersedes the findings of these earlier

lower court decisions.

"None of our precedents has suggested that only a strict causal relationship
between the defendant's in-state activity and the litigation will do.  As just noted,
our most common formulation of the rule demands that the suit "arise out of ***or
relate to*** the defendant's contacts with the forum."  Id. at __ (slip op., at 5) (quoting
*Daimler*, 571 US at 127; emphasis added; alterations omitted); see supra at 6.)

Therefore, in determining WashU contacts with Maryland, all of WashU's

contacts with Maryland as a research university should be considered, not just the

contacts with the WashU School of Law. **Just as a car is a car, research is**

**research.**

## III.  The District Court Erred in Finding that Plaintiff Provided No Evidence That Defendants Reached into Maryland to Solicit or Initiate Business or Caused Tortious Injury Under Maryland Long Arm Statute § 6-103(b)(3) and § 6-103(b)(4)

The District Court found that "it is not clear from the [Plaintiff's] submitted

materials whether WashU initiated these contacts." The non-exclusive factor at

issue is "(3) whether the defendant reached into the State **to solicit or** initiate

business." (Bold added for emphasis.) *UMG Recordings Inc. v. Kurbanov*, 963 F.3d

344, 352 (4th Cir. 2020). Thus, solicitation is **also** relevant and the District Court erred in its failure to recognize the same. Plaintiff submitted several articles as Exhibits showing WashU's Maryland contacts, including as an article from the WashU website dated March 7, 2024 stating:

"When he became dean of the School of Medicine in 2016, Perlmutter launched a strategic initiative to expand the school's research infrastructure and programs with a goal of increasing NIH funding to the second highest level in the country. That target was reached last year when School of Medicine researchers received awards totaling $583.6 million."

Plaintiff respectfully submits to the 4th Circuit that this article shows that over the course of over 8 years, from 2016 to 2024, WashU's "strategic initiative to expand the school's research infrastructure and programs with a goal of increasing NIH [in Maryland] funding to the second highest level in the country." The article does not say that the NIH, a Maryland entity, launched a strategic initiative; it says that "Perlmutter [dean of WashU School of Medicine] launched a strategic initiative." Therefore, Pearlmutter, as an agent of WashU, was the solicitor of NIH contracts in Maryland, not NIH. The District Court erred in failing to recognize WashU solicitation of NIH contracts as evidence of purposeful availment to the state of Maryland.

**IV. The District Court Erred When Articulating Standard that Defendant WashU made in-person contact with Plaintiff by adding the language "while**

in Maryland" when it is not part of the factor enumerated in *UMG Recordings Inc. v. Kurbanov*, 963 F.3d 344, 352 (4th Cir. 2020).

Plaintiff had extensive in-person contacts with Defendants during her WashU residency in her first three semesters of law school which satisfy the "whether the defendant made in-person contact with a resident of the State regarding the business relationship" factor of the 4th Circuit test for purposeful availment. *UMG Recordings, Inc*. at 352. The District Court erred in requiring that this contact be in Maryland stating "As to the sixth factor, there are no allegations of in-person Contacts with Brown, her mother or anyone else related to the case **while in Maryland.**" (Emphasis Added.) There is no such requirement. Thus, the District erred in finding that Plaintiff did not satisfy factor six (6) of the Fourth Circuit factors for purposeful availment.

**V. The District Court Erred in Finding that There Were No Allegations That Any Relevant Contract Was Expected To Be Performed In Maryland Under Maryland Long Arm Statute § 6-103(b)(6)**

The District Court erred in the factual finding that the vast majority of the Defendant WashU's tortious conduct underlying Plaintiff's claims occurred in Missouri, when they in fact took place in Maryland, New York, and Pennsylvania. Plaintiff spent over half of her law school time in Maryland, residing in Maryland since December 2022. And because of Plaintiff's fear of arrest in retaliation for her

16

complaints of race and sex discrimination, Plaintiff has not stepped foot in
Missouri since December 2022.

The District Court erred in citing cases as analogous where a Plaintiff was
able to complete their studies at Defendant University and in Defendant's home
jurisdiction.  See *Khalil v. Chatham Coll.*, 391 F. Supp. 588 (S.D. Tex. 2005)
(Texas had no personal jurisdiction because performance of the contract occurred
in Pennsylvania); *Cassell v. Loyola Univ.*, 294 F. Supp. 622, 624 (E. D. Tenn.
1968) (Tennessee had no personal jurisdiction because no performance of the
contract was contemplated in Tennessee).  Further, the District Court erroneously
found that "the educational activities underlying the relationship between WashU
Law School and Brown were undisputedly contemplated to occur in Missouri."
Since at least the end of 2022, Defendants contemplated that Brown would finish
her law degree outside of Missouri, and sent notices (including on December 10th,
2022) to Plaintiff's home regarding the suspension to her Maryland address. Thus,
this District Court's finding is a clear factual error.

Further, the District Court erred in finding that there were no allegations that
any relevant contract was interfered with and expected to be performed in
Maryland when in fact, there were several: Defendants' release of all claims and
non-disparagement agreement negotiated with Plaintiff within the state of

Maryland, with contractual obligations **to be expressly performed outside of the state of Missouri.** Defendants also interfered with Plaintiff's employment contracts to be performed in the state of Maryland including offers of clerkships with the National Center for Youth Law and the United Nations Forum for People of African Descent. The District Court also incorrectly characterized Defendants' correspondence with Plaintiff, as well as the terms of her suspension as solely prohibiting her from being "on-campus" when the terms were arbitrary and indefinite - but pointedly required Plaintiff to leave the state of Missouri. (Amended Complaint, Exhibit F, page 53.)

Defendants foresaw, through Defendant Walsh and Wild's deliberate prohibition of Plaintiff's attendance at an off-campus AMC theater, or any off-campus office hours, that Plaintiff would understand that she was constructively evicted from her apartment (which was in the off-campus WashU police department patrol zone) that Plaintiff was instructed, upon her temporary suspension, to leave Missouri at once.[2]

---

[2] Additionally, there are 4 ABA-accredited law schools in Missouri, ranked by US News and World Report as follows:  1) Washington University in St. Louis School of Law, or Wash U School of Law #14, University of Missouri in Columbia #57, Saint Louis University School of Law #94 and University of Missouri Kansas City #99.  Most law school applicants, like Plaintiff, prioritize attending the highest-ranked law school they are admitted to because higher-ranked schools often offer more opportunities after graduation, including access to larger firms, prestigious clerkships, and academic positions. In fact, "T14 law schools" are a

Defendant Wild - who was cc'd on the release and non-disparagement agreement (which does not contain a forum selection clause) - both physically mailed a letter to Plaintiff's Maryland address **and** emailed Plaintiff detailing the terms of her suspension. Defendant Wild further forbade Plaintiff from attending any on-campus OR off-campus events – including a showing of Black Panther at a local, non-University owned AMC movie theater. (Appendix A)

Further, Defendants Wild, Walsh, and Gore foresaw that they would be subject to Maryland jurisdiction in several parts of the Agreement. The first half of Defendants' Agreement (which was brokered with and sent to Plaintiff in Maryland after Plaintiff's reasonable fear of arrest by the WashU Police department) delineates in great detail Defendants' manifest intent, explicit request, direction, and desire for Plaintiff to finish her degree outside of WashU.

In Defendants' release of all claims, Defendants Gore, Wild, and Walsh enticed Plaintiff, a Maryland resident, on behalf of WashU, to leave the state of Maryland by offering Plaintiff her $38,000 per year scholarship if she left to study elsewhere. The District Court held that Plaintiff losing her scholarship was

---

group of top ranked law schools in the United States. Washington University is at the bottom of this group at #14. WashU being the newest member of the "T14" is the only reason why most students would choose to live in St. Louis, Missouri - one of the most dangerous, poor, and racially segregated cities in the United States.

unrelated to her complaints of racial discrimination or winning the Student

Conduct Board hearing - but instead, was "standard" based on a section of

WashU's handbook for visiting students. This was erroneous. Defendants directed

Plaintiff, vis a vis adhesion contract, to leave WashU and complete her degree

elsewhere.

Further, Plaintiff submitted to the District Court with her Complaint (ECFs 4

and 48) in Exhibit F, "Release of All Claims and Non-Disparagement Agreement"

drafted by Defendants Osgood, Walsh, and Wild, and electronically submitted to

Plaintiff in Maryland by Defendant Nicole Gore, cc'ing Defendants Walsh and

Wild. Defendants' agreement specifically states that Plaintiff:

"will apply for admission as a visiting student to other law schools to complete her
third year of law school … the School of Law will grant her leave as needed."

 The agreement also states Plaintiff can only:

"enroll in classes at the School of Law for one semester during the 2023-2024
academic year to complete her law degree **remotely** <u>if and only if</u> (1) Allison is
not accepted into a visiting student or study abroad program at another law school
and  (2) she demonstrate to the School of Law's satisfaction that she has made
systematic, sustained and diligent efforts to obtain admittance elsewhere."

Defendant' agreement also states:

"Allison Brown will not attend any Washington University sponsored events and
will not be permitted on the Washington University campus (or any university
owned, lease, managed or rented property) without advance permission."
(ECF 48 Amended Complaint pages 54-55.)

20

Therefore, it was delusional for Defendants to argue before the District Court that Plaintiff's move was unilateral, when they banished her from all on-campus AND off-campus activities and events. No similarly situated Plaintiff would believe they were permitted to stay after receiving an indefinite temporary suspension barring them from on-campus and off-campus events, Defendants' proffered release of all claims, and non-disparagement agreement.

Additionally, no similarly situated Black Maryland resident like Plaintiff would remain in Missouri for any reason other than attending Wash U, a T14 law school. In fact, that is the only reason why Plaintiff (or any other Black person from the Northeast) would choose to attend Wash U, along with the $37,000 per-year scholarship with only one stated condition: "maintain full time student status." As stated above, the remaining law schools in Missouri are not ranked in the top 50, so there would be no reason for Plaintiff to stay in Missouri if she could not attend WashU. Further, Plaintiff's forcible relocation to Georgetown University Law Center (GULC) by Defendants was reasonable, as GULC is also ranked #14 and is close to Plaintiff's Maryland home. Why would Plaintiff stay in Missouri to attend another Missouri law school that is not ranked in the Top 50, when she is from Maryland? All of Defendants' correspondence to Plaintiff (including her suspension from Rob Wild) is addressed to a Maryland address.

21

Thus, Defendants anticipated that Plaintiff would leave Missouri, as they strongly urged her to do so through Agreement, and their failure to provide adequate assurances after the SCBH regarding discrimination and completion of Plaintiff's law school contract in Missouri. When Plaintiff refused to sign the Agreement, Defendants brought a SCBH against Plaintiff to remove Plaintiff from WashU in accordance with the same Agreement. Plaintiff was not given a meaningful choice to relocate from Missouri. Instead, in order to complete her law degree without arrest by Defendants, Plaintiff was directed to leave, and she complied.

The District Court also erred in determining that the "release of all claims" portion of the Agreement was not expected to be performed in Maryland.  The release of all Claims portion of the Agreement states:

> **"Release:**
>
> Allison Brown for herself and **her family members, heirs, personal representatives, and assigns,** hereby releases and forever discharges, Washington University in St. Louis, including the School of Law, its trustees, employees, former employees, faculty, administrators, students, representatives, insurers, attorneys, agents, and assigns ("Released Parties" from any and against any and all causes of action, judgments, liens, indebtedness, costs, damages, obligations, attorneys' fees, losses, claims, liabilities and demands of whatever kind and character, whether known or unknown, suspected or unsuspected, and whether based on contract, tort, statutory or other legal or equitable theory of recovery, that she now has or may have had, or hereafter may claim to have, **on behalf of herself or any other person or entity,** including but not limited to claims arising out of or

22

relating in any way to the Student Conduct Proceeding, the temporary suspension and/or Allison Brown's attendance at the School of Law."

Defendants' Release meets all 3 requirements of the test established by the

4th Circuit for a court exercising personal jurisdiction over an out-of-state

defendant if the defendant:

 "(1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's Courts."  *ALS Scans, Inc. v Digital Service Consultants, Inc.*, 293 F.3d 707 (4th Cir. 2002).  Id.  at 712, 714.

The release was electronically transmitted by Defendant Gore into the state

of Maryland (1) with the intent of creating a binding agreement of Maryland

Citizens, (not only of Plaintiff and Plaintiff's mother, but also her father and

siblings who reside in Maryland) (2)  with the manifested intent of quelling any

quest by family members for retribution from WashU for their horrific actions

against Plaintiff, and (3) it creates a potential cause of action cognizable in

Maryland Courts as Defendants would have to use Maryland Courts to enforce this

agreement against Maryland citizens, including Plaintiff herself.

Plaintiff has no family members, heirs, personal representatives or assigns in

Missouri. Thus, it would be impossible for Defendants to enforce this agreement

against Plaintiff's family members in Missouri - because there are none. Plaintiff's

family members reside in and pay taxes in the state of Maryland. There is no

23

choice of law provision in the agreement. Thus, Defendants would be looking to
Maryland courts to enforce this agreement. Defendants explicitly and implicitly
purposefully availed themselves and consented to personal jurisdiction in
Maryland and Maryland Courts pursuant to the *ALS Scans* doctrine. The District
Court committed factual error in its failure to find the same.

Additionally, Defendants reached into the state of Maryland to effectuate
harm and torts upon Plaintiff via the revocation of her scholarship in connection
with her contractual obligations pursuant to her law degree, control Plaintiff and
restrain Plaintiff's speech and movement in the state of Maryland. Defendants
contracted to bind Plaintiff, a Maryland resident, to an unconscionable agreement
from speaking about the racial and sexual discrimination to which she was
subjected at WashU. Therefore, Defendants, in order to enforce the
"non-disparagement" agreement, would be looking to Maryland courts to enforce
this provision of the agreement because Plaintiff is a Maryland resident, and the
only address where Defendants knew to serve with process or otherwise contact
Plaintiff was in Maryland. Therefore, Defendants Osgood, Wild, Walsh, and Gore,
who drafted, oversaw, and signed the agreement, foresaw that they would be
subject to personal jurisdiction in Maryland.

24

Lastly, Plaintiff attaches to this brief an email from Lisa Wood, Esq, General Counsel of WashU, cc'ing Defendant Deanna Wendell-Modde, thanking Plaintiff's mother, a Maryland citizen, resident and taxpayer, for her inquiry into Defendant WashU's need to apply Plaintiff's scholarship to her tuition bill and asking for all future correspondence to be sent to Lisa Wood, Esq. (Appendix B) Therefore, through this instance, Lisa Wood solicited the contact of Plaintiff and her mother regarding the scholarship revocation while Plaintiff lived in Maryland and attended Georgetown University Law Center while completing her degree requirements for Defendant WashU. Therefore, through this instance, Defendants intentionally made contact with the state of Maryland.

## VI. The District Court Erred in Finding that Defendants' Tortious Acts in Maryland Did Not Meet the "Effects Test" as stated in *Consulting Engineers Corp. v. Geometric Ltd.* 561 F.3d 273 (4th Cir. 2009)

Every single day that Defendants materially interfered with Plaintiff's education and receipt of recordings was in Maryland because Plaintiff was banished from Missouri; thus, an entire semester of torts against Plaintiff was committed in Maryland. This includes the prohibition of any contact with professors and students, and failure to transmit her course recordings while Plaintiff was forcibly removed under threat of arrest by the Wash U Police Department from the state of Missouri.

25

**VII.  The District Court Erred in Finding that Plaintiff's Move to Missouri was Unilateral, and that the Vast Majority of the Defendants /WashU Conduct Underlying Brown's Claims Occurred in Missouri and Not Maryland**

The District Court erred in finding that "the vast majority of the conduct by Defendants underlying Brown's claims occurred in Missouri, including the alleged race discrimination and the alleged failure adequately to address race discrimination and sexual harassment."

All of Defendants' tortious acts were erroneously not considered when the District Court determined that Plaintiff's move to Maryland was unilateral.  In addition to the Agreement discussed in Section V, Defendants made WashU inhospitable before Plaintiff moved to Maryland by:

1. "WashU's failure to investigate Plaintiff's claim against Richard O for sexual harassment despite Plaintiff providing to WashU a "rape contract" given to her by Richard O that he could rape Plaintiff and engage in odd rituals involving semen and blood.

2. WashU's failure to protect Plaintiff from a classmate that brought guns on campus and to school events.

3. WashU reprimanding only Plaintiff for complaining of race discrimination by Defendant Katz, and doing nothing to the five white students who also complained of race discrimination of Black students by Defendant Katz.

4. WashU ignoring Plaintiff's claim that Defendant Katz was racist.

5. WashU instructing Plaintiff that they would suspend her if she called a policy or law "racist" in the classroom.

26

6. WashU's failure to do anything to Richard O when he filed a restraining order against Plaintiff and the court set the hearing to the same time as a law school final exam, and then Richard O intentionally skipped the hearing.

7. WashU's failure to provide a timely Letter of Good Standing in support of her application to transfer to Columbia and Georgetown.

8. WashU failure to address Plaintiff's fear that she was not safe at WashU.

9. WashU's acceptance of Defendant Davis' racist chicanery, proclaiming she was a member of the Klan, and resulting in Plaintiff getting suspended

10. WashU telling Plaintiff that she could be arrested if she stepped on campus, as it violated the terms of the suspension letter. In fact, WashU recently admitted that it used a Missouri trespass statute that would subject Plaintiff to a fine of up to $500 and up to six months in prison if she violated the terms of the suspension letter. Defendant's Supplemental Brief in Support of Their Motion to Dismiss for Lack of Personal Jurisdiction or, In the Alternative, Failure to State a Claim at 10. [ Plaintiff is "subject to arrest by Washington University Police . . . simply reflects Missouri's law of trespass Mo. Rev. Stat. Section 569.140 (defining trespass in the first degree)." ]

11. WashU forbidding Plaintiff from attending an off-campus "Black Panther" movie premiere with members of the Black Graduate Students Association would be a violation of the terms of the suspension letter, an event she planned as Vice President of the Black Graduate Students Association.

12. WashU forcing Plaintiff to resign from her position as Vice-President of the Black Graduate Students Association.

13. WashU forbidding Plaintiff from interacting with any students or faculty at WashU.

14. WashU failure to provide Plaintiff with recordings of classes that she was supposed to receive in lieu of class interaction

15. WashU not allowing Plaintiff to intern for the National Center for Youth Law or the United Nations Permanent Forum for People of African Descent

16. WashU giving Plaintiff no meaningful choice of signing a release of all claims and non-disparagement agreement requiring Plaintiff to leave campus for the remaining amount of her legal studies or face a SCBH

17. WashU instructing Plaintiff explicitly that they did not want her to finish her studies at WashU and to apply to other schools to finish her degree." (Am. Comp.)

It was beyond foreseeable that Defendant should have expected Plaintiff would leave Missouri, and that it would not be unreasonable for her, or any other similarly situated Plaintiff, to return to her hometown after being subjected to such heinous discriminatory treatment by Defendants. Defendants cannot plausibly claim that they are surprised that Plaintiff brought her claims in this Court. *See Vogel v. Morpas*, No. RDB-17-2143, 2017 WL 5187766, at *6 (D. Md. Nov. 9, 2017) ("[Defendant] cannot plausibly claim that it is surprised that as a result of brokering that Agreement, litigation in Maryland might ensue.") If litigating in Maryland is so unduly burdensome, Defendants should have given Plaintiff adequate assurances when she demanded them after the SCBH, that Defendants would not continue to discriminate, harm, and retaliate against Plaintiff if she were to return to Missouri. (Am. Comp. ¶¶ 127-128, 136-138)

No reasonable person would have stayed in St. Louis, one of the poorest, most dangerous, most segregated cities in the country, under Defendants' oppressive conditions of on-and-off campus suspension, mandated social isolation,

28

and forbidden communication. It is inconceivable would Defendants think it would be reasonable for Plaintiff, a Black woman, to stay in Missouri under these discriminatory conditions after Defendants Wild, Walsh, and Gore accused Plaintiff, but not any other student, of acting in violation of the SCB with no corroborative evidence, and threatening her with arrest in reference to the same.

As the District Court of Maryland correctly noted, Defendants refused to give assurances that Defendants would stop discriminating against Plaintiff or that she would not be arrested, harmed, imprisoned, or possibly killed if she were to return to WashU. Memo. Op. at 9.

In fact, Plaintiff left Missouri in December 2022 leaving all of her belongings and has not returned to Missouri since. Instead of returning to retrieve her belongings when her lease ended in Summer 2023, Plaintiff had a friend enter her apartment and sort her belongings.  The friend sent some of Plaintiff belongings to Maryland, donated some belongings and threw away the remaining belongings to vacate Plaintiff's apartment. The thought of entering Missouri terrifies Plaintiff and she has no intention of ever doing the same.

None of the cases cited by the District Court of Maryland found that Defendants made its home jurisdiction so racially intolerant, inhospitable, and dangerous to Plaintiff that Plaintiff had to leave Defendants' home jurisdiction.

29

Plaintiff was continuously subjugated to unfair discriminatory treatment by WashU

Defendants, who even utilized Missouri resources against Plaintiff and Plaintiff has

received no acknowledgement by WashU Defendants or any Missouri entity of any

wrongdoing to this day. In contrast, in *Helicopteros Nacionales v. Hall*, 466 U.S.

408 (1984), there was no evidence that plaintiff U.S. Citizens would be unsafe in

Colombia if they brought their claims there. Compare *Walden v. Fiore*, 571 US 277

(2014), (one rogue Georgia DEA agent but Georgia justice was ultimately served

when money was rightfully returned to Fiore, and there was no safety issue in

Fiore pursuing claims in Georgia), *Diamond Healthcare of Ohio, Inc. v. Humility

of Mary Health Partners*, 229 F.3d 448 (4th Cir. 2000) (no evidence that Diamond

would be subject to danger if litigated breach of contract claims against HMH in

Ohio); *Fields v. Sickle Cell Diseases Ass'n of Am., Inc.*, 376 F. Supp. 3d 647, 650,

652-654 (EDNC 2018)  (no evidence that Fields would be unsafe bringing her

claims in Maryland); *Harnett v. Duquesne University*, 897 F. Supp. 920 (D. Md.

1995) (no evidence that Harnett would be harmed if brought claims in

Pennsylvania instead of Maryland); *Vilchis v. Miami Univ. of Ohio*, 99 F. App'x

743, 744 (7th Cir. 2004) (no evidence that Vilchis would be harmed if brought

claims in Ohio instead of Illinois); *Scherer v. Curators of Univ. of Missouri*, 152 F.

supp. 2d 1278, 1279-80, 1284-85 (D. Kan. 2001) (no evidence that Scherer would

be harmed if brought claims in Kansas instead of Missouri).

Further, none of the Defendants have apologized to Plaintiff for their

discriminatory actions. And none of the case law cited by the District Court

dispensed with the compelling issue of Plaintiff's safety as it pertained to litigating

in a hostile forum that Defendants architected. Plaintiff's safety was compromised

throughout her short stay in Missouri.  Plaintiff was:

1.  "harassed by a known sexual predator awarded a full scholarship to WashU
    School of Law and WashU did nothing.

2.  given a rape contract by the same sexual predator and WashU did not even
    investigate.

3.  given a summons to appear in court for a temporary restraining order by the
    same known sexual predator coincidentally at the same time as one of her
    law school final exams.  Plaintiff had to reschedule the exam and prolong
    her stay in St. Louis at the end of her 1st year, and WashU did nothing

4.  threatened by another law student with a gun during a WashU sponsored
    "Bar Review" WashU did nothing and performed no investigation

5.  suspended for allegedly being a threat to the WashU community after a
    Professor feigned that Plaintiff was being disruptive in class and instead of
    investigating the Professor, subjected Plaintiff to an extensive SCBH

6.  subjected to Missouri Statute for trespass in which she could face $500 fine
    or up to 6 months in jail for violating terms of suspension letter, which
    included not only stepping on the WashU campus, but attending an
    off-campus movie or even being in her apartment, which was in the patrol
    zone of the WashU police department." (Am. Comp.)

Plaintiff is unable, due to safety concerns, to travel to Missouri to file the

Complaint (which is required for the commencement of a civil action in the

Eastern District of Missouri) to litigate her claims. If Plaintiff is required to litigate

31

her claims in Missouri, Defendants' will be awarded with impunity for their

invidious discrimination and retaliation against Plaintiff.

## VIII. The District Court Correctly Found Evidence of a Conspiracy, and the Conspiracy Should Stand Despite the District Court's Error in Finding No Personal Jurisdiction

In fact, if Defendants had protected Plaintiff and recognized Defendant

Davis' chicanery, Plaintiff most likely would not be before this court seeking

relief.  Unfortunately, Defendants chose to protect Defendant Davis and continue

their tortious conspiracy against Plaintiff, which continues to this day, as they lied

to the MD Bar Association about Plaintiff constituting a threat to Defendants, and

foreseeably made Plaintiff so impoverished that she qualifies for food stamps after

contributing to her loss of employment after transmitting the same false statements

to her employers in Maryland, New York, and Pennsylvania.

## IX.  District Court Erred in Not Allowing Jurisidictional Discovery

The general contacts provided to the District Court in Maryland were

sufficient to establish a prima facie case of personal jurisdiction.  However, if these

general Maryland contacts were insufficient, Plaintiff should have been provided

an opportunity to conduct jurisdictional discovery, as Plaintiff was only able to

ascertain "newsworthy" WashU Maryland contacts ascertainable via public

information on the internet, and had no way or mechanism of determining whether

there are other "non-newsworthy" WashU Maryland contacts (like Plaintiff's

contract with WashU) to support her claim of jurisdiction. Plaintiff respectfully submits that the Maryland contacts obtained on the web were sufficient to justify jurisdictional discovery.  Compare *Grayson v. Anderson*, 816 F.3d 262 , 266 (Mar 7, 2016)  (parties fully performed jurisdictional discovery with depositions, affidavits, and  interrogatories).  In contrast, no jurisdictional discovery was granted by the District Court in this action.

## CONCLUSION

Every Defendant has infinitely more resources than Plaintiff, and legal representation.  Plaintiff is indigent and pro se. Plaintiff receives food stamps from the State of Maryland. In the interest of not offending notions of fair play and substantial justice, this case should be remanded to the state of Maryland for further proceedings.

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff is ready for oral arguments as soon as practicable by the parties.

**Signature of Pro-Se Plaintiff/Appellant**

Allison Brown
6405 Chew Road
Upper Marlboro, MD 20772
E-mail: asb151@georgetown.edu

33

Appendix A - Page 1

**From:** Pepe, Rachel <rpepe@wustl.edu>
**Sent:** Friday, November 11, 2022 11:46:04 AM
**To:** Brown, Allison <allison.brown@wustl.edu>
**Cc:** Cissell, Jessica <jessica.k.cissell@wustl.edu>
**Subject:** BGSA Position

Dear Allison:

I learned from the Black Grad Student Association that you are in the
midst of a student conduct proceeding and have been temporarily
suspended from the university.  It is my understanding that the terms of
your temporary suspension prohibit your participation in extracurricular
university activities pending the outcome of your case.  As a result, you
will not be able to participate in BGSA until your case is resolved.

Sincerely,
Rachel

Rachel Pepe
The Graduate Center
Washington University in St. Louis
6475 Forsyth Suite 300
MSC 1186-226-300
p:314-935-9358

34

Appendix A - Page 2

**Sent:** Friday, November 11, 2022 12:26 PM
**To:** Pepe, Rachel <rpepe@wustl.edu>
**Cc:** Cissell, Jessica <jessica.k.cissell@wustl.edu>; Wild, Rob
<rob.wild@wustl.edu>; Walsh, Elizabeth <ewalsh@wustl.edu>
**Subject:** Re: BGSA Position

All,

Yes – I have been "temporarily suspended" from the Wash U campus but I am still
enrolled as a student and taking classes.

Further, I paid tuition. I am still a student at Wash U, a citizen of the United States
(where the 1st Amendment exists,) and pose no physical threat to anyone on
campus or otherwise. Because a few people on campus got offended that their
actions were being perceived as racist or ableist, I am now in a dispute (of which
the outcome is undetermined) with these students and professors who seek
protection from being held accountable with their ableism and racism.

I hope that this situation is resolved swiftly, and the University is receptive to my
offer to waive my first amendment right to post online about the tone-policing,
sexual violence, and racism that I have endured at the institution in order to be left
alone by the University's continued attempts to silence me.

But in the meantime, the notion that I should not be able to participate in a part of
the University that values and needs me, the Black Graduate Students
Association (see letters attached), is a flagrant violation of my rights as a student,
and as a citizen of this country.

Additionally, I was suspended one week ago, and still have not been provided a
list of charges. The University has incorrectly stated that I "was warned" about
"this type of behavior in the past." Yet, no evidence of that "warning" exist, and I
have no idea why I was suspended, other than that I made some folks
"uncomfortable" and "pose a threat to the learning environment." Read: I was not
comfortable enough with my professors' and classmates' dedication to white
supremacy. I sincerely hope to not escalate this to litigation, but if need be, I will.

If you, Rachel or Jessica, would like to be included in the list of people that have
interfered with my rights as a student, please let me know and I will be more than
happy to include you in the process.

Thanks,
Allison Brown

35

Appendix A - Page 3

**From:** Wild, Rob <rob.wild@wustl.edu>
**Date:** Friday, November 11, 2022 at 2:14 PM
**To:** Brown, Allison <allison.brown@wustl.edu>, Pepe, Rachel <rpepe@wustl.edu>
**Cc:** Cissell, Jessica <jessica.k.cissell@wustl.edu>, Walsh, Elizabeth <ewalsh@wustl.edu>
**Subject:** RE: BGSA Position

Thank you for copying me on your response, Allison. However, you are not allowed to participate in BGSA activities until your pending conduct matter is resolved.

Rob

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •
Robert M. Wild
Associate Vice Chancellor for Student Affairs
Dean of Students & Chief of Staff
Washington University
One Brookings Drive, Campus Box 1250
St. Louis, MO 63130
Phone: (314) 935-4526
Mobile: (314) 541-6049
Pronouns: he, him, his

Appendix B - E-mails from Lisa Wood and Defendant Deanna Wendler-Modde

----- Forwarded Message -----
**From:** Wood, Lisa (Asst VC) <wood_esq@wustl.edu>
**To:** Patricia Brown <brownandrussell@verizon.net>; Wendler Modde, Deanna <dwendler@wustl.edu>
**Sent:** Friday, September 1, 2023 at 11:44:06 AM EDT
**Subject:** RE: Allison Brown Tuition Bill

Ms. Brown,

I appreciate you reaching out.  Dean Walsh is aware of Allison's request and will be responding to her today.

Please feel free to reach out with any additional questions you might have.

Best,

Lisa

**Lisa M. Wood**

Associate Vice Chancellor & Deputy General Counsel

Washington University in St. Louis


On Wed, Aug 30, 2023 at 6:55 PM, Wendler Modde, Deanna <dwendler@wustl.edu> wrote:

Good afternoon Ms. Brown,

I wanted to let you know that I received your voicemail, but I am not involved in the current tuition issue.  I have copied my colleague, Lisa Wood, who will get back to you.  Lisa is out of the office tomorrow, but she will call you back on Friday.

Thanks,
Deanna Wendler Modde

Deanna M. Wendler Modde

Assistant Vice Chancellor & Associate General Counsel

Washington University in St. Louis

One Brookings Drive CB 1058

St. Louis, MO 63130

Direct:  314.935.4039

Facsimile:  314.935.6191

Email: dwendler@wustl.edu

37

Appendix C - Page 1



Appendix C - Page 2

ADOBE



A Cassava Sciences collaborator and paid consultant has been indicted by a federal grand jury on charges of defrauding the National Institutes of Health in grant applications supporting the company's controversial Alzheimer's drug, the U.S. Department of Justice announced on Friday.

Hoau-Yan Wang, 67, a neuroscientist at the City University of New York, published key papers supporting the effectiveness of simufilam, an experimental Alzheimer's therapy Cassava is now testing in late-stage clinical trials. But outside researchers, including a panel of CUNY investigators, have raised major questions about Wang's work, arguing that his research supporting simufilam contains fabricated and falsified data, including extensive data manipulations. And in court documents filed on Thursday with the U.S. District Court for the District of Maryland, the Justice Department accused Wang of securing $16 million in NIH funding by submitting fraudulent grant applications on behalf of himself and Cassava.

ADVERTISEMENT



SPONSORED INSIGHT                                                              ▷ ⋮

From research to advocacy: A new fellowship honors
Stephen Harrison's vision in MASH research  Read more

By Madrigal Pharmaceuticals

"It was the purpose of the scheme for Wang to fraudulently obtain NIH funding to enrich himself through continued and future compensation by making materially false, fraudulent, and misleading statements to NIH relating to this scientific research," the indictment states.