Case No. 25-1887

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

---

ALLISON BROWN,

*Plaintiff-Appellant*,

v.

WASHINGTON UNIVERSITY SCHOOL OF LAW, et al.,

*Defendants-Appellees*.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND AT GREENBELT
THE HONORABLE THEODORE D. CHUANG, UNITED STATES DISTRICT JUDGE

---

## INFORMAL APPELLEES' BRIEF

---

Alicia M.S. Pitts
SAUL EWING LLC
1001 Fleet Street, 9th Floor
Baltimore, Maryland 21202
alicia.pitts@saul.com
(410) 332-8693

Winthrop B. Reed III
Lindsey M. Bruno
Daniel C. Carter
LEWIS RICE LLC
600 Washington Avenue, Suite 2500
St. Louis, Missouri 63101
wreed@lewisrice.com
lbruno@lewisrice.com
dcarter@lewisrice.com
(314) 444-7600

*Attorneys for Appellees*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and Local Rule 26.1, Appellees state that they are individuals, a university, and a school within a university. They are not stock corporations, have no parent corporation, and have no shareholders. Appellees reaffirm that their previously filed disclosure statements remain complete and correct.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ....................................................2

TABLE OF CONTENTS................................................................................3

TABLE OF AUTHORITIES ..........................................................................5

JURISDICTIONAL STATEMENT ................................................................5

STATEMENT OF THE ISSUES....................................................................9

STATEMENT OF THE CASE .......................................................................9

SUMMARY OF THE ARGUMENT ............................................................13

ARGUMENT .............................................................................................14

    I.    The district court correctly granted Defendants' motion to dismiss for lack of personal jurisdiction. ..............................................14

        A.    Governing Law and Its Application.........................................15

            1.  General Personal Jurisdiction .............................................16

            2.  Specific Personal Jurisdiction.............................................18

            3.  Maryland's Long-arm Statute ............................................29

        B.    The district court recognized Plaintiff's *pro se* status and applied the correct legal standards.........................................................30

        C.    The district court properly analyzed WashU's alleged Maryland contacts and concluded that they did not support specific personal jurisdiction.................................................................32

        D.    The district court correctly concluded under the Maryland long-arm statute that Defendants did not "solicit" business in Maryland related to her claims. ..............................................34

         E.    In considering the sixth purposeful-availment factor, the district court correctly considered whether Plaintiff had alleged in-person contacts *in Maryland*.....................................................35

F.      Section 6-103(b)(6) is not applicable.......................................36

G.      The district court properly concluded that the *Calder* effects test does not support personal jurisdiction. ....................................36

H.      The district court correctly characterized Plaintiff's move to Maryland as "unilateral." ...........................................................38

I.      Plaintiff's eighth argument is unintelligible; the district court did not find "evidence of a conspiracy.".........................................40

II.     The district court did not abuse its discretion in denying Plaintiff's request for jurisdictional discovery..................................40

STATEMENT REGARDING ORAL ARGUMENT ............................................41

CONCLUSION ....................................................................................................42

CERTIFICATE OF COMPLIANCE ....................................................................43

CERTIFICATE OF SERVICE .............................................................................43

# TABLE OF AUTHORITIES

## Cases

*ALS Scan, Inc. v. Digit. Serv. Consultants, Inc.*, 293 F.3d 707 (4th Cir. 2002) 16, 41

*Beyond Sys. Inc. v. Realtime Gaming Holding Co.*, 878 A.2d 567 (Md. 2005) ......16

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) .................................... 18, 27

*Calder v. Jones*, 465 U.S. 783 (1984) ......................................................................36

*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390 (4th Cir. 2003) ................................................................................. 15, 37, 40, 41

*CFA Institute v. Institute of Chartered Fin. Analysts of India*, 551 F.3d 285 (4th Cir. 2009) ................................................................................. 24, 27, 28

*Christian Sci. Bd. of Dirs. of First Church of Christ, Sci. v. Nolan*, 259 F.3d 209 (4th Cir. 2001) ......................................................................................27

*Combs v. Bakker*, 886 F.2d 673 (4th Cir. 1989) ......................................................15

*Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273 (4th Cir. 2009) ................................................................... 14, 19, 23, 24, 35

*Costar Realty Info., Inc. v. Meissner*, 604 F. Supp. 2d 757 (D. Md. 2009) ...........15

*Cranford v. Tennessee Steel Haulers, Inc.*, No. ELH-17-2768, 2018 WL 3496428 (D. Md. July 20, 2018) .................................................................36

*Erickson v. Pardus*, 551 U.S. 89 (2007) .................................................................31

*Estelle v. Gamble*, 429 U.S. 97 (1976) ...................................................................31

*Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124 (4th Cir. 2020) ..................................16

*Fields v. Sickle Cell Disease Ass'n of Am., Inc.*, 376 F. Supp. 3d 647 (E.D.N.C. 2018) ...........................................................................................................21

*Ford v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351 (2021) ................... 24, 26, 27

*Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915 (2011) .......................16

*Haines v. Kerner*, 404 U.S. 519 (1972) .................................................31

*Hardnett v. Duquesne Univ.*, 897 F. Supp. 920 (D. Md. 1995) ...............................21

*Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408 (1984) 23, 38, 39

*Hirschkop & Grad, P.C. v. Robinson*, 757 F.2d 1499 (4th Cir. 1985) ....................35

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) ..................................18

*Isaacs v. Arizona Bd. of Regents*, 608 F. App'x 70 (3d Cir. 2015) .........................21

*J. McIntyre Mach., Ltd. v. NiCastro*, 564 U.S. 873 (2011) .....................................16

*Jones v. Mutual of Omaha Ins. Co.*, 639 F. Supp. 3d 537 (D. Md. 2022).. 19, 24, 38

*Keaton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984) .........................................18

*Krashes v. White*, 341 A.2d 798 (Md. 1975) ...........................................................16

*Kurtz v. United States*, 779 F. Supp. 2d 50 (D.D.C. 2011).....................................31

*Lefebvre v. Washington Univ.*, No. 20C4928, 2021 WL 197388 (N.D. Ill. Jan. 20, 2021) ........................................................................................ 22, 25, 26

*Mackey v. Compass Mktg., Inc.*, 892 A.2d 479 (Md. 2006) ....................................16

*McLaughlin v. Copeland*, 435 F. Supp. 513 (D. Md. 1977)....................................36

*Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56 (4th Cir. 1993) ....................................15

*Sneha Media & Ent., LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192 (4th Cir. 2018)........................................................................................19

*Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132 (4th Cir. 1996) ....................... 23, 26

*UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344 (4th Cir. 2020)........... 19, 20, 35

*Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553 (4th Cir. 2014) ..............35

*Walden v. Fiore*, 571 U.S. 277 (2014)...................................... 18, 19, 23, 25, 38, 39

**Statutes**

28 U.S.C. § 1291 .................................................................................................8

28 U.S.C. § 1331 ................................................................8

28 U.S.C. § 1332 ..............................................................18

28 U.S.C. § 1367(a) ...........................................................8

28 U.S.C. § 1404 ..............................................................13

42 U.S.C. § 1981 ...........................................................8, 10

42 U.S.C. § 1983 ...........................................................8, 10

42 U.S.C. § 1985 ...........................................................8, 10

42 U.S.C. § 2000d ..........................................................8, 10

42 U.S.C. § 2000e ..........................................................8, 10

42 U.S.C. § 2000e-17 .......................................................8, 10

Md. Code Ann., Cts. & Jud. Proc. § 6-103 (West 2020) ............... 16, 29, 30, 34, 36

**Other Authorities**

*Unilateral Act*, Black's Law Dictionary (12th ed. 2024) ........................................40

**Rules**

Fed. R. App. P. 26.1 ...........................................................2

Fed. R. App. P. 4(a)(1)(A) .....................................................8

Fed. R. App. P. 4(a)(2) ........................................................8

Fed. R. Civ. P. 12(b)(2) .......................................................8

## JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1367(a). The district court's federal-question jurisdiction was based on alleged violations of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d, 2000e to 2000e-17, the Civil Rights Act of 1866, 42 U.S.C. § 1981, as well as 42 U.S.C. §§ 1983, 1985, and the Fifth and Fourteenth Amendments of the United States Constitution. The district court had supplemental jurisdiction over the other, state law claims. The district court lacked personal jurisdiction over any Defendant, and all Defendants moved to dismiss on that basis. *See* Fed. R. Civ. P. 12(b)(2).

The district court announced its decision to grant Defendants' motion to dismiss for lack of personal jurisdiction in a written order on August 1, 2025, and formally dismissed the case without prejudice on August 12, 2025. Plaintiff filed a notice of appeal on August 4, 2025, which is deemed filed as of August 12, 2025. *See* Fed. R. App. P. 4(a)(2). Thus, this is a timely appeal from a final order or judgment that disposes of all parties' claims, and this Court has jurisdiction under 28 U.S.C. § 1291. *See* Fed. R. App. P. 4(a)(1)(A).

## STATEMENT OF THE ISSUES

I.      Whether the district court erred in granting Defendants' motion to dismiss for lack of personal jurisdiction.

II.     Whether the district court abused its discretion in denying Plaintiff's request for jurisdictional discovery.

## STATEMENT OF THE CASE

Plaintiff Allison Brown filed this civil action against Defendant Washington University in St. Louis[1] ("WashU"), Washington University in St. Louis School of Law[2] ("WashU Law School"), and twelve of WashU's faculty and staff: Law Professors Adrienne Davis, Russell Osgood, Peggie Smith, and Elizabeth Katz; the Law School's Associate Dean for Student Life and Academic Services Elizabeth Walsh; the Law School's Director of Financial Aid and Student Life Carrie Burns; the Law School's Assistant Dean of Diversity, Equity & Inclusion Angela Smith; WashU's Dean of Students Rob Wild; WashU's faculty member and Chair of the Student Conduct Board Darrell Hudson; WashU's Associate Dean for Student Conduct and Community Standards Nicole Gore; WashU's Associate Vice Chancellor for Student Affairs Mark Kamimura-Jiménez; and WashU's Associate

---

[1] This Defendant's legal name is The Washington University.

[2] "Washington University in St. Louis School of Law" is not an independent legal entity.

General Counsel Deanna Wendler-Modde (the "Individual Defendants") (together, "Defendants").  (Second Am. Compl., ECF No. 48.)

In the operative Second Amended Complaint, Plaintiff asserted 12 claims in the following numbered counts: (1) race discrimination, sex discrimination, and retaliation in employment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17; (2) race discrimination, sex discrimination, and retaliation in a federally funded program, in violation of Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. § 2000d; (3) race discrimination and retaliation under the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("§ 1981"); (4) fraud and unjust enrichment; (5) intentional infliction of emotional distress; (6) negligence; (7) breach of contract; (8) defamation; (9) conspiracy to interfere with civil rights, in violation of 42 U.S.C. § 1985; (10) sex discrimination in an educational program, in violation of Title IX; (11) violation of due process rights under the Fifth and Fourteenth Amendments to the United States Constitution based on threats of arrest under 42 U.S.C. § 1983; and (12) violations of the Fifth and Fourteenth Amendments based on interference in a property interest in education.

Though at times difficult to decipher, the crux of the Second Amended Complaint appears to be that WashU temporarily suspended Plaintiff from campus for six months while investigating whether she violated the Student Code of Conduct

by "engag[ing] in a pattern of disruptive and harassing behavior targeted at law school community members, including faculty and students." (Second Am. Compl., at 49 ("Effective immediately, you are no longer permitted on campus. You will be permitted to complete your classes remotely, as noted below.").) Plaintiff claims that this investigation was actually pursued "because [she] is Black and complained of racial discrimination." (*Id.* ¶ 87.) She alleges that in May 2023, the end of her second year of law school, the Student Conduct Board found her "not guilty" of the charges made against her under the Student Code of Conduct. (*Id.* ¶ 123.)

Plaintiff further alleges she paid WashU $17,455.02 in cash and $30,000 in federal student loans for the 2023-2024 academic year. (*Id.* at 1.) Because, however, WashU allegedly revoked her $37,000 annual scholarship, Plaintiff still owed approximately $40,000. (*Id.*; *see also id.* at 57-60.) Plaintiff alleges WashU wrongfully revoked her scholarship and wrongfully initiated garnishment proceedings to collect her outstanding, unpaid tuition balance and late fees. (*Id.* at 1; *see also id.* at 57-60.)

The Second Amended Complaint describes various classroom interactions, meetings with faculty and staff, and disciplinary proceedings—all of which took place in Missouri. Plaintiff alleges that she relocated to Maryland after being suspended from campus and remained in Maryland when she enrolled at Georgetown University Law Center for her third year of law school. (*Id.* ¶ 3.) The

Second Amended Complaint's only allegations connecting Defendants to Maryland are that Plaintiff "submitted" her application to WashU from Maryland in February 2021 (*id.* ¶ 27), that WashU "continuously recruits students, including Plaintiff" who are "from the state of Maryland" (*id.* ¶ 4), that "Defendants" sent billing documents to Plaintiff's Maryland address (*id.* ¶ 23), that Plaintiff experienced "adverse and discriminatory actions" while residing in Maryland, (*id.*), that the Student Conduct Board hearing took place "in Maryland" (*id.* ¶¶ 20, 36), and that she was "constructively evict[ed]" from her St. Louis apartment causing her to "fle[e]" to Maryland (*id.* ¶ 86).

Defendants moved to dismiss for lack of personal jurisdiction, and the parties extensively briefed the motion. In her initial memorandum in opposition, Plaintiff requested leave to conduct jurisdictional discovery. While the parties briefed the motion to dismiss, the district court afforded Plaintiff numerous opportunities to amend her complaint. (*See* Order of Apr. 7, 2025, ECF No. 47; Order of Apr. 25, 2025, ECF No. 55; Order of June 30, 2025, ECF No. 59.). Ultimately, the district court granted Defendants' motion to dismiss and denied Plaintiff's request for jurisdictional discovery in a thorough 34-page order and dismissed Plaintiff's case

without prejudice.[3]  (Memorandum & Order of Aug. 1, 2025, ECF No. 67; Order of

Aug. 1, 2025, ECF No. 68; Order of Aug. 12, 2025, ECF No. 72.)  Plaintiff appeals.

## SUMMARY OF THE ARGUMENT

The district court correctly dismissed this action for lack of personal

jurisdiction over all Defendants.  Neither general nor specific personal jurisdiction

exists over any Defendant in Maryland.  Washington University, with its constituent

law school, is incorporated and headquartered in Missouri, and none of the

Individual Defendants are domiciled in Maryland.  Specific jurisdiction is likewise

absent because Defendants did not purposefully avail themselves of the privilege of

conducting activities in Maryland, Plaintiff's claims do not arise from any Maryland-

directed activities, and exercising jurisdiction would be constitutionally

unreasonable.  The events giving rise to Plaintiff's claims occurred entirely at

Washington University's Missouri campus.  That Plaintiff unilaterally chose to

relocate to Maryland after her suspension and attend classes remotely from there

cannot create the minimum contacts necessary for personal jurisdiction.  Moreover,

Maryland's long-arm statute does not reach Defendants' alleged conduct, as

---

[3] The district court offered to transfer the case to the United States District
Court for the Eastern District of Missouri upon Plaintiff's request.  *See* 28 U.S.C.
§ 1404.  In response, Plaintiff did not request transfer; she instead accepted dismissal
without prejudice.

Defendants neither transacted relevant business in Maryland nor committed any acts or omissions there that gave rise to Plaintiff's claims.

The district court also properly exercised its discretion in denying Plaintiff's request for jurisdictional discovery. Despite multiple opportunities to amend her complaint and develop her jurisdictional allegations, Plaintiff did not identify any specific evidence she would seek through jurisdictional discovery or explain how such evidence might establish personal jurisdiction. Having failed to meet her burden to demonstrate a need for jurisdictional discovery, Plaintiff cannot now claim the district court abused its discretion in denying her request. The district court's judgment should be affirmed in all respects.

## ARGUMENT

### I.    The district court correctly granted Defendants' motion to dismiss for lack of personal jurisdiction.

<u>Standard of Review</u>

This Court "review[s] de novo a district court's dismissal for lack of personal jurisdiction, although [it] review[s] for clear error any underlying factual findings." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009).

\*          \*          \*

Plaintiff's appeal centers on her contention that the district court erred in granting Defendants' motion to dismiss for lack of personal jurisdiction, and she

offers several arguments in this regard. Defendants respond to each argument after first summarizing the applicable law and applying it to the case at hand.

### A.    Governing Law and Its Application

Under Federal Rule of Civil Procedure 12(b)(2), it is the plaintiff's burden to establish personal jurisdiction. *See Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993). When a court decides a Rule 12(b)(2) motion without an evidentiary hearing, the plaintiff must make a *prima facie* showing that a defendant is properly subject to the court's jurisdiction. *Id.*; *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). In evaluating the plaintiff's showing, a court must accept the plaintiff's allegations as true, and it must draw all reasonable inferences and resolve any factual conflicts in the plaintiff's favor. *Mylan Labs., Inc.*, 2 F.3d at 59-60. The Court may consider declarations and other submitted evidence in resolving a Rule 12(b)(2) motion. *See Costar Realty Info., Inc. v. Meissner*, 604 F. Supp. 2d 757, 763-64 (D. Md. 2009).

Under Rule 4(k)(1)(A), a federal court may exercise personal jurisdiction over a defendant in the manner provided by state law. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). A district court's exercise of personal jurisdiction over a nonresident defendant must satisfy both the long-arm statute of the state in which the court sits and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Id.* The Maryland long-

arm statute, Md. Code Ann., Cts. & Jud. Proc. § 6-103 (West 2020), authorizes the exercise of personal jurisdiction to the limits permitted by the Due Process Clause of the Fourteenth Amendment. *See ALS Scan, Inc. v. Digit. Serv. Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002); *Beyond Sys. Inc. v. Realtime Gaming Holding Co.*, 878 A.2d 567, 576 (Md. 2005). There may be cases, however, in which personal jurisdiction comports with federal due process but which present factual scenarios outside the scope of the long-arm statute. *See Krashes v. White*, 341 A.2d 798, 804 (Md. 1975). Thus, the jurisdictional analysis under the long-arm statute does not simply collapse into the due process analysis. *See Mackey v. Compass Mktg., Inc.*, 892 A.2d 479, 493 n.6 (Md. 2006).

## 1. General Personal Jurisdiction

The United States Supreme Court has recognized two distinct types of personal jurisdiction: general and specific. *See J. McIntyre Mach., Ltd. v. NiCastro*, 564 U.S. 873, 881 (2011). Neither exists here. General personal jurisdiction exists only if a defendant is so closely connected to a forum state as to be "at home" there—the paradigmatic examples being a natural person's state of domicile (*i.e.*, where a person resides and intends to remain indefinitely) and a corporation's state of incorporation or location of its principal place of business. *See Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 924 (2011); *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 132 (4th Cir. 2020) ("[T]he paradigm forums where corporations are

16

fairly regarded as at home are the forums where it is incorporated and where it has its principal place of business.").

The district court lacked general personal jurisdiction over any Defendant. WashU and its law school's place of incorporation and principal place of business is St. Louis, Missouri (Second Am. Compl., ECF No. 48 at ¶ 4; *see also* Declaration of D. Wendler-Modde, ECF No. 31-5 at ¶ 7), and no Individual Defendant is domiciled in Maryland. Instead, Defendants Davis, A. Smith, Burns, Wendler-Modde, Walsh, Kamimura-Jimenez, Gore, P. Smith, Osgood, and Wild reside and intend to remain indefinitely in Missouri. (Declaration of A. Davis, ECF No. 31-1 at ¶ 3;, Declaration of A. Smith, ECF No. 31-2 at ¶ 3; Declaration of C. Burns, ECF No. 31-3 at ¶ 3; Declaration of D. Wendler-Modde, ECF No. 31-5 at ¶ 3; Declaration of E. Walsh, ECF No. 31-7 at ¶ 3; Declaration of M. Kamimura-Jimenez, ECF No. 31-8 at ¶ 3; Declaration of N. Gore, ECF No. 31-9 at ¶ 3; Declaration of P. Smith, ECF No. 31-10 at ¶ 3; Declaration of R. Osgood, ECF No. 31-11 at ¶ 3; Declaration of R. Wild, ECF No. 31-12 at ¶ 3.) Defendant Hudson resides and intends to remain indefinitely in Michigan. (Declaration of D. Hudson, ECF No. 31-4 at ¶ 4.) And Defendant Katz resides and intends to remain indefinitely in Florida. (Declaration of E. Katz, ECF No. 31-6 at ¶ 5.) In fact, Plaintiff herself implicitly admits that the Court does not have general personal jurisdiction over any Defendant because no Defendant is a citizen of Maryland. (Second Am. Compl. ¶¶ 4, 7-16; *id.* ¶ 19

(alleging that the Court "has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as there exists complete diversity of citizenship between the Plaintiff and Defendants . . . .").)  Accordingly, the district court correctly held that it could not exercise general personal jurisdiction over any defendant.

## 2.    Specific Personal Jurisdiction

Specific personal jurisdiction arises when "the relationship among the defendant, the forum, and the litigation" involves "certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (first quoting *Keaton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984), then quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  This "relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State," and the Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State."  *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)); *see also id.* at 285 ("[T]he plaintiff cannot be the only link between the defendant and the forum.").

This Court has formulated a three-part test for use in determining whether there is specific jurisdiction over a defendant. The three prongs are: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting

activities in the State; (2) whether the plaintiffs' claims arise out of those activities

directed at the State; and (3) whether the exercise of personal jurisdiction would be

constitutionally reasonable." *Jones v. Mutual of Omaha Ins. Co.*, 639 F. Supp. 3d

537, 549 (D. Md. 2022) (quoting *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561

F.3d 273, 278 (4th Cir. 2009)).  It is necessary to evaluate the second and third

prongs of the test for specific personal jurisdiction "[i]f, and only if" the first prong

is satisfied." *Consulting Eng'rs Corp.*, 561 F.3d at 278.

### a.    Prong 1: Purposeful Availment

This Court has likewise identified a list of non-exhaustive factors to be

considered in the purposeful availment inquiry:

> (1) whether the defendant maintained offices or agents in the State;
> (2) whether the defendant maintained property in the State; (3) whether
> the defendant reached into the State to solicit or initiate business;
> (4) whether the defendant deliberately engaged in significant or long-
> term business activities in the State; (5) whether a choice of law clause
> selects the law of the State; (6) whether the defendant made in-person
> contact with a resident of the State regarding the business relationship;
> (7) whether the relevant contracts required performance of duties in the
> State; and (8) the nature, quality, and extent of the parties'
> communications about the business being transacted.

*UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 352 (4th Cir. 2020) (quoting

*Sneha Media & Ent., LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192, 198-99

(4th Cir. 2018)).  The focus should be on "the defendant's contacts with the forum

State itself not the defendant's contacts with persons who reside there." *Walden*,

571 U.S. at 285.  In assessing purposeful availment, the Court considers "the *quality*

19

and *nature* of the defendant's connections" to the forum state, "not merely the number of contacts between the defendant and the forum state." *UMG Recordings, Inc.*, 963 F.3d at 352.

Here, the quality and nature of Defendants' contacts with Maryland do not establish purposeful availment. As to the first four factors, Plaintiff does not allege that Defendants maintain any offices, agents, or property in the state of Maryland, and the declarations of the Individual Defendants confirm that they do not own property or pay taxes in Maryland. (Declaration of A. Davis at ¶ 5; Declaration of A. Smith at ¶ 5; Declaration of C. Burns at ¶ 5; Declaration of D. Hudson at ¶ 6; Declaration of D. Wendler-Modde at ¶ 5; Declaration of E. Katz at ¶ 7; Declaration of E. Walsh at ¶ 5; Declaration of M. Kamimura-Jimenez at ¶ 5; Declaration of N. Gore at ¶ 5; Declaration of P. Smith at ¶ 5; Declaration of R. Osgood at ¶ 5; Declaration of R. Wild at ¶ 5.) Plaintiff also does not allege that any of the Individual Defendants have or seek to solicit or initiate any business in the state or engage in significant or long-term business activities in Maryland, and the declarations of the Individual Defendants confirm that they do not. (Declaration of A. Davis at ¶ 4; Declaration of A. Smith at ¶ 4; Declaration of C. Burns at ¶ 4; Declaration of D. Hudson at ¶ 5; Declaration of D. Wendler-Modde at ¶ 4; Declaration of E. Katz at ¶ 6; Declaration of E. Walsh at ¶ 4; Declaration of M. Kamimura-Jimenez at ¶ 4;

20

Declaration of N. Gore at ¶ 4; Declaration of P. Smith at ¶ 4; Declaration of R. Osgood at ¶ 4; Declaration of R. Wild at ¶ 4.)

Plaintiff does allege that she "submitted" her application to WashU from Maryland in February 2021 and that WashU "continuously recruits students to attend their undergraduate and graduate programs from the state of Maryland." (Second Am. Compl. ¶¶ 4, 27.) Plaintiff does not, however, offer any factual allegations concerning any activities WashU engaged in to recruit *her* (let alone where such recruitment activities allegedly took place). Moreover, "[w]hatever argument might be made in favor of personal jurisdiction over nonforum commercial establishments that advertise for Maryland customers, the same cannot be said of a nonforum university." *Hardnett v. Duquesne Univ.*, 897 F. Supp. 920, 924 (D. Md. 1995) (internal citation omitted); *see also, e.g.*, *Isaacs v. Arizona Bd. of Regents*, 608 F. App'x 70, 76 (3d Cir. 2015); *Fields v. Sickle Cell Disease Ass'n of Am., Inc.*, 376 F. Supp. 3d 647, 652-54 (E.D.N.C. 2018) (granting motion to dismiss where plaintiff telecommuted, no meetings were held in forum, no employees traveled to forum to work with plaintiff, and plaintiff initiated contact with defendant and noting that plaintiff's choice to complete her work in the forum state was a unilateral decision that cannot be fairly attributed to the defendant). Further, to the extent that WashU's recruitment of other students from Maryland constitutes "long-term business" in the

state, Plaintiff has pleaded no facts suggesting that her claims arise out of or relate to it.

As to the fifth, sixth, and seventh factors, Plaintiff does not allege that there is a Maryland choice-of-law provision in any contract applicable to this case, or that there was a contract requiring the performance of any activities in Maryland. In fact, to the extent that WashU "sold" Plaintiff an education, the "teaching occurred in Missouri regardless of whether Plaintiff heard it in Missouri or in [Maryland]." *Lefebvre v. Washington Univ.*, No. 20C4928, 2021 WL 197388, at *2 (N.D. Ill. Jan. 20, 2021) (dismissing claims against WashU for lack of personal jurisdiction). Plaintiff does not allege that WashU or its agents made any in-person contact with Plaintiff in Maryland. Plaintiff also does not allege any contract or business relationship with any of the Individual Defendants in this case.

The eighth factor concerns the parties' communications. In a vague attempt to plead the existence of personal jurisdiction, Plaintiff alleges in conclusory fashion that an unspecified "Defendant committed a substantial part of the discriminatory acts against Plaintiff within this District," causing her to "experienc[e] a significant amount of adverse and discriminatory actions . . . while residing in the state of Maryland." (Am. Compl. ¶ 23.) Yet the only specific factual allegation Plaintiff makes is that WashU "sent billing documents to Plaintiff's address in Maryland." (*Id.*) The Fourth Circuit has rejected assertions of personal jurisdiction on the basis

of communications alone. *See Consulting Eng'rs*, 561 F.3d at 279-81 (finding that the exercise of personal jurisdiction would not comport with due process where "the contacts that support . . . jurisdiction consist of approximately four telephone conversations and twenty-four emails"); *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 137 (4th Cir. 1996) (concluding that "electronic connection . . . does not establish [a party's] 'presence' in that jurisdiction").

As shown, the purposeful-availment factors weigh in favor of dismissing this case for lack of personal jurisdiction. Personal jurisdiction cannot arise from a student's choice to participate in remote learning from Maryland. When WashU suspended Plaintiff from its campus, it permitted her to complete courses remotely as an accommodation—not as an engagement with Maryland. Plaintiff's unilateral decision to move to Maryland after her suspension cannot cause Defendants to be subject to the jurisdiction of Maryland's courts. *Walden*, 571 U.S. at 284 ("We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State."); *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) ("[T]he unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction."). Because the first prong is not satisfied, the Court should conclude that specific personal

jurisdiction does not exist and end the inquiry here. *Consulting Eng'rs Corp.*, 561 F.3d at 278.

### b.     Prong 2: Arise out of Activities Directed at the State

The second specific personal jurisdiction prong asks "whether the plaintiffs' claims arise out of those activities directed at the State." *Jones*, 639 F. Supp. 3d at 549. Under this prong, the Court can *only* exercise specific personal jurisdiction over a defendant where the claims against that defendant arise out of or relate to the defendant's contacts with the forum. *Ford v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) ("The plaintiff's claims, we have often stated, 'must arise out of or relate to the defendant's contacts' with the forum."). In other words, the activity in the forum state must form "the genesis of [the] dispute." *CFA Institute v. Institute of Chartered Fin. Analysts of India*, 551 F.3d 285, 295 (4th Cir. 2009).

Here, the Second Amended Complaint demonstrates the absence of relevant contacts with Maryland: none of Plaintiff's eleven claims arise out of or relate to any activities directed at Maryland. The allegations in the Second Amended Complaint concern WashU's investigation of alleged misconduct, implementation of disciplinary proceedings, and decisions regarding Plaintiff's scholarship—all of which occurred in Missouri. Plaintiff's claims of discrimination, harassment, and defamation stem from classroom interactions, meetings, and administrative proceedings that took place entirely on WashU's St. Louis campus. That Plaintiff

alleges to have experienced the effects of these Missouri-based actions while residing in Maryland does not establish the required connection between Defendants' alleged forum contacts and her claims. *Walden*, 571 U.S. at 290 (holding that with respect to specific jurisdiction, the question "is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.").

The mere fact that WashU sent billing documents to Plaintiff's Maryland address or that she attended classes remotely from Maryland does not transform this fundamentally Missouri-centered dispute into one arising from Maryland contacts. *See id.* Indeed, Plaintiff's own allegations demonstrate that her claims arise from conduct that occurred *before* she relocated to Maryland. She alleges that she moved to Maryland only after being suspended from campus, and the suspension itself resulted from events that transpired entirely in Missouri.[4] The subsequent mailing

---

[4] Plaintiff baldly asserts that the Student Conduct Board hearing took place "in Maryland." (Second Am. Compl., ¶¶ 20, 36.) To the extent this allegation could be understood to assert that the hearing physically took place in Maryland, it is not plausible. Plaintiff's allegations and exhibits themselves show that the WashU hearing panel took evidence over the course of four days from students and staff. (*Id.* ¶¶ 56, 92, 93, 98, 100, 102-03, 107, 109, 112-13, 116.) Absent a pleaded explanation for how that could have happened in Maryland, the Court should not take the allegation as true. To the extent Plaintiff implies by this allegation that she participated in the hearing remotely from Maryland, (*see* Pl.'s Memo. Opp'n Mot. Dismiss, ECF No. 39 at 7), such an allegation does not impact the personal jurisdiction analysis. The hearing "occurred in Missouri regardless of whether Plaintiff heard it in Missouri or in [Maryland]." *Lefebvre*, 2021 WL 197388, at *2.

of bills to her Maryland address and her remote attendance at classes were merely incidental to the Missouri-based conduct that forms the basis of her claims.

Moreover, Plaintiff does not allege that any of the Individual Defendants engaged in conduct specifically directed at Maryland that gives rise to her claims. The Individual Defendants' various roles in the disciplinary proceedings, scholarship decisions, and alleged discriminatory conduct all concerned their work as WashU employees in Missouri. That Plaintiff unilaterally chose to relocate to Maryland after these events cannot create the necessary connection between her claims and any defendant's forum contacts. *See Stover*, 84 F.3d at 137. Although Plaintiff alleges that WashU "continuously recruits students to attend their undergraduate and graduate programs from the state of Maryland," this contact cannot support specific jurisdiction because her claims do not arise from or relate to such alleged recruitment activities. The Supreme Court has made clear that specific jurisdiction requires a substantive causal link between a defendant's forum contacts and a plaintiff's claims. *See Ford*, 592 U.S. at 360. WashU's general recruitment of students from Maryland has no causal relationship to Plaintiff's claims of discrimination, retaliation, and wrongful discipline arising from her time as a student in Missouri. *See Lefebvre*, 2021 WL 197388, at *2.

Even under the most generous reading of the Amended Complaint, none of Plaintiff's alleged injuries arose from or related to WashU's Maryland recruitment

activities.  Thus, this factor weighs heavily against finding personal jurisdiction over Defendants.  *See Ford*, 592 U.S. at 359.

### c.    Prong 3: Constitutionally Reasonable

Finally, the Court's exercise of personal jurisdiction over Defendants would not be constitutionally reasonable.  *See Christian Sci. Bd. of Dirs. of First Church of Christ, Sci. v. Nolan*, 259 F.3d 209, 217 (4th Cir. 2001).  "In determining whether jurisdiction is constitutionally reasonable, [courts] may evaluate 'the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in further fundamental substantive social policies.'"  *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477-78 (1985)).  The Court must keep in mind "the inequity of being haled into a foreign forum," especially when the defendants could not reasonably foresee that they could be subject to suit there.  *CFA Inst.*, 551 F.3d at 296.

Applying these principles, requiring Defendants to litigate this case in Maryland would impose a substantial and unreasonable burden.  Each Individual Defendant resides in either Missouri, Michigan, or Florida, and WashU is a citizen of Missouri.  Defending this action in Maryland would require Defendants to travel across the country, away from their places of employment and residence, to litigate

claims that arose entirely from conduct occurring in Missouri. *See id.* The burden is particularly acute given that virtually all relevant witnesses and evidence are located in Missouri, where Plaintiff's legal education, as well as the alleged discriminatory acts and disciplinary proceedings, took place.

Maryland's interest in adjudicating this dispute is minimal. While Plaintiff currently resides in Maryland, the controversy centers on events that occurred entirely within Missouri at a Missouri institution. Although Plaintiff claims to have experienced effects of the alleged conduct while in Maryland, these effects stem solely from her unilateral decision to relocate there after her suspension. The interstate judicial system's interest in efficient resolution of controversies strongly favors litigating these claims in Missouri, where the vast majority of witnesses and evidence are located. Moreover, Missouri has a far greater interest than Maryland in regulating the conduct of its educational institutions and adjudicating disputes arising from educational services provided within its borders. Requiring Defendants to defend against claims in Maryland based solely on a student's choice to participate in remote learning from that forum would offend traditional notions of fair play and substantial justice. In sum, all of the relevant factors reveal that personal jurisdiction is lacking under the Due Process Clause.

### 3.      Maryland's Long-arm Statute

As relevant here, Maryland's long-arm statute authorizes jurisdiction over a party which, directly or by an agent, "(1) [t]ransacts any business or performs any character of work or service in the State; . . . (3) [c]auses tortious injury in the State by an act or omission in the State; [or] (4) [c]auses tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, services, or manufactured products used or consumed in the State."  Md. Code Ann., Cts. & Jud. Proc. § 6-103(1), (3)-(4).  To exercise personal jurisdiction under the long-arm statute, the Court must determine that at least one of these bases has been satisfied.  *See id.* § 6-103(a).  Moreover, if jurisdiction is based on the long-arm statute, the defendant "may only be sued on a cause of action arising from" one of the acts "enumerated in this section."  *Id.*

First, Defendants have not transacted relevant business or performed any relevant work or service in Maryland within the meaning of § 6-103(1).  Although WashU allegedly recruits students from Maryland, Plaintiff's claims do not arise from any recruitment activities in Maryland.  The mere fact that Plaintiff unilaterally chose to attend classes remotely from Maryland after her suspension, or that WashU sent bills to her Maryland address, does not constitute transacting business in the state.  Moreover, none of the Individual Defendants conducted any business or

performed any work in Maryland—their interactions with Plaintiff occurred entirely in Missouri as part of their employment.

Second, Plaintiff's allegations fail to satisfy either § 6-103(3) or § 6-103(4). Section 6-103(3)does not apply because Defendants did not commit any relevant acts or omissions in Maryland; rather, all alleged discriminatory conduct and disciplinary proceedings occurred in Missouri. Section 6-103(4) is likewise inapplicable because Defendants do not regularly conduct business in Maryland, maintain any persistent course of conduct there, or derive substantial revenue from services in Maryland. WashU's alleged general recruitment of Maryland citizens does not establish the type of regular, persistent conduct contemplated by the statute, particularly where Plaintiff's claims bear no relationship to such alleged recruitment. The Individual Defendants have even less connection to Maryland, as they neither conduct business nor derive any revenue from the state. In short, Maryland's long-arm statute does not reach Defendants.

**B.    The district court recognized Plaintiff's *pro se* status and applied the correct legal standards.**

In her brief, Plaintiff does not conduct a competing personal-jurisdiction analysis. She instead offers discrete reasons why she believes the district court was wrong. Plaintiff first argues that the district court failed to recognize that she was proceeding *pro se* and failed to apply *pro se* "pleading standards" to her claims. This argument fails for several reasons.

30

To begin, the district court recognized plaintiff's *pro se* status in the very first sentence of its Memorandum & Order. (*See* Memorandum & Order of Aug. 1, 2025 at 1 ("Self-represented Plaintiff Allison Brown has filed this civil action . . . .").) The district court further explained that it would "accept the plaintiff's allegations as true, and . . . draw all reasonable inferences and resolve any factual conflicts in the plaintiff's favor. (*Id.* at 11.) The district court was therefore aware of Plaintiff's status throughout its analysis.

Next, it is not clear that *pro se* plaintiffs are even entitled to a special pleading standard in the context of a motion to dismiss for lack of personal jurisdiction. The Supreme Court cases setting out the *pro se* "liberal construction" standard all arose in the context of a motion to dismiss for failure to state a claim. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). It makes little sense to apply a special *pro se* standard in the context of a motion to dismiss for lack of personal jurisdiction because such a motion implicates Defendants' Due Process rights. Dismissals for lack of personal jurisdiction likewise are without prejudice, meaning that a plaintiff whose case is dismissed for lack of personal jurisdiction is generally free to refile his or her case in the proper jurisdiction. This is why "[p]ro se plaintiffs are not freed from the requirement to plead an adequate jurisdictional basis for their claims." *Kurtz v. United States*, 779 F. Supp. 2d 50, 51 (D.D.C. 2011).

In any event, because this Court's review of the jurisdictional issue is *de novo*, the foregoing does not actually impact this Court's analysis. Plaintiff does not explain how the district court's purported failure to liberally construe her complaint would affect the personal-jurisdiction analysis. She seems to say that the district court incorrectly characterized her return to Maryland as unilateral. For the reasons explained in Part I.H below, this characterization was manifestly correct. No matter how Plaintiff's complaint is construed, Plaintiff fails to make a *prima facie* case for personal jurisdiction over any Defendant.

### C.    The district court properly analyzed WashU's alleged Maryland contacts and concluded that they did not support specific personal jurisdiction.

Plaintiff next contends that the district court erred by failing to recognize WashU as the "proper legal entity" in the case. This assertion is contradicted by the record. Plaintiff's first two complaints named "Washington University School of Law", not "Washington University," as the institutional defendant. To clarify the identity of the proper defendant, WashU pointed out in its opening memorandum in support of its motion to dismiss that Washington University School of Law is not an independent entity. In her Second Amended Complaint, Plaintiff added Washington University itself as a defendant, but retained Washington University School of Law as a defendant, as well. Thus, the district court appropriately noted that Plaintiff purported to sue both Washington University and Washington University School of

Law, even if the latter is not actually a separate entity.  Of course, Plaintiff was never penalized in any way for naming the Law School as a separate defendant.  Indeed, this issue had no impact on the proceedings in the district court.

But Plaintiff attempts to parlay her confusion into an argument that the district court erred in "solely considering" WashU Law School's Maryland contacts, rather than WashU's Maryland contacts more broadly.  She says that "WashU is the proper entity to consider when determining jurisdiction, not the WashU School of Law, since WashU School of Law is not even a legal entity and therefore, non-jural."  Thus, she asserts that the district court "erred, and should have considered *all* of WashU study and research contacts with Maryland in determining whether or not personal jurisdiction" existed.  In support, Plaintiff offers the following quotation from the district court's order:  "Brown has not provided any basis to establish the second prong, that her claims arose out of these general contacts, where none of these contacts have anything [to] do with WashU Law School generally or any program in which she participated specifically."  Plaintiff appears to argue that this quotation demonstrates that the district court disregarded WashU's Maryland contacts, instead focusing only on the Law School's contacts with Maryland.

But in reaching the above-quoted conclusion, the district court was not ignoring WashU's Maryland contacts as a whole because of confusion over whether the Law School was the proper party defendant.  Instead, the district court reached

the obvious conclusion that Plaintiff's claims did not arise out of or relate to WashU's Maryland contacts related to research funding and dual degree programs. Thus, this argument does not provide a basis for reversal.

### D. The district court correctly concluded under the Maryland long-arm statute that Defendants did not "solicit" business in Maryland related to Plaintiff's claims.

Plaintiff pivots to the Maryland long-arm statute. She claims that the district court erred "in failing to recognize WashU solicitation of NIH contracts as evidence of purposeful availment to the state of Maryland" such that Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(3) and (b)(4)were satisfied.

As mentioned, these provisions of the long-arm statute authorize Maryland courts to exercise jurisdiction over a party that "directly or by an agent" "[c]auses tortious injury in the State by an act or omission in the State" or "[c]auses tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State." *Id.* § 6-103(b)(4). However, if jurisdiction is based on the long-arm statute, the defendant "may be sued only on a cause of action arising from" one of the acts "enumerated in this section." *Id.* § 6-103(a) The district court persuasively explained why neither subdivision of the long-arm statute is satisfied: With respect to "WashU's general activities relating to

contracts with Maryland universities or federal government agencies . . . Brown's claim[s] do not arise from these contacts . . ." Thus, WashU's engagement with the National Institutes of Health is not relevant to the analysis.

### E. In considering the sixth purposeful-availment factor, the district court correctly considered whether Plaintiff had alleged in-person contacts *in Maryland*.

Plaintiff next argument concerns the sixth purposeful-availment factor and borders on the frivolous. The sixth purposeful-availment factor considers "whether the defendant made in-person contact with a resident of the State regarding the business relationship." *UMG Recordings, Inc.*, 963 F.3d at 352. Plaintiff claims that this factor weighs in her favor because of "extensive in-person contacts with Defendants during her WashU residency." She claims that, under Fourth Circuit precedent, *non-forum* in-person contacts are relevant to consideration of this factor. This assertion is simply incorrect. Under Fourth Circuit precedent, the sixth purposeful-availment factor is: "whether the defendant made in-person contact with the resident of the forum *in the forum state* regarding the business relationship." *Consulting Eng'rs Corp.*, 561 F.3d at 278 (emphasis added) (citing *Hirschkop & Grad, P.C. v. Robinson*, 757 F.2d 1499, 1503 (4th Cir. 1985)); *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 560, 562 (4th Cir. 2014). Plaintiff concedes that no such in-person contact took place.

F.     **Section 6-103(b)(6) is not applicable.**

Plaintiff next argues that the district court erred "in finding that there were no allegations that any relevant contract was expected to be performed in Maryland under Maryland Long Arm Statute § 6-103(b)(6)."  "Section 6-103(b)(6) 'is a specialized subsection relating to insurer and surety relationships.'"  *Cranford v. Tennessee Steel Haulers, Inc.*, No. ELH-17-2768, 2018 WL 3496428, at *6 (D. Md. July 20, 2018) (quoting *McLaughlin v. Copeland*, 435 F. Supp. 513, 529 (D. Md. 1977)).  But Plaintiff's claims do "not arise out of a contract to insure, [so] § 6-103(b)(6) cannot be the basis for personal jurisdiction."  *Id.*  To the extent that Plaintiff's contentions under this heading could be understood to relate to the Maryland long-arm statute more broadly, Defendants respectfully direct the Court to Part I-A-3 of this brief.

G.     **The district court properly concluded that the *Calder* effects test does not support personal jurisdiction.**

Plaintiff next argues that the district court erred in rejecting her argument that personal jurisdiction is proper by application of the "effects" test of *Calder v. Jones*, 465 U.S. 783, 789-90 (1984).  Under this test, a plaintiff can establish specific personal jurisdiction by showing "(1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point

36

of the tortious activity." *Carefirst*, 334 F.3d at 398 n.7. She claims that the district court should have concluded that the effects test supports the exercise of personal jurisdiction because "Defendants materially interfered with Plaintiff's education and receipt of [class] recordings" and because "Plaintiff was banished from Missouri."

Plaintiff made a similar argument in the district court. She similarly claimed that she was "constructively evict[ed]" from her St. Louis apartment, causing her to "fle[e]" to Maryland. (Second Am. Compl. ¶ 86.) To support her claim of "banishment," she pointed to her suspension letter, which stated that Plaintiff was "prohibited from being present on any Washington University campus or any University leased or owned property, including but not limited to the Danforth Campus, the School of Law, any Residential Life-managed on and off-campus residence halls and apartments, and the Danforth University Center and the Athletic Complex." (*Id.* at 49.) She claimed that Defendants constructively evicted her from her privately owned, off-campus apartment because this privately owned, off-campus apartment is located within an off-campus patrol zone. (*Id.* ¶ 86; *see also id.* at 61.) But the fact that the Washington University Police Department patrols the neighborhoods surrounding campus does not transform these neighborhoods into WashU property. By the suspension letter's plain terms, Plaintiff was prohibited from campus and University property, not her private, off-campus apartment. Plaintiff's argument thus fails at its premise. And, for the sake of argument, even if

Plaintiff *had* lived on campus and *was actually* evicted from an on-campus apartment, those facts would not support personal jurisdiction in Maryland. A Missouri university's eviction of a student from an apartment in Missouri cannot fairly be deemed an "activit[y] directed at" Maryland. *See Jones v. Mutual of Omaha Ins. Co.*, 639 F. Supp. 3d 537, 549 (D. Md. 2022).

As the district court explained, the post-temporary-suspension allegations referenced in Plaintiff's brief do not support the conclusion that Defendants "expressly aimed" their conduct into the state of Maryland. Rather, to the extent that the harm was felt in Maryland, it was the result of Brown's unilateral decision to relocate there. This conclusion is indisputably correct. *See Helicopteros*, 466 U.S. at 416-17 ("[U]nilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction."); *Walden*, 571 U.S. at 284, 286 ("A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum.").

## H. The district court correctly characterized Plaintiff's move to Maryland as "unilateral."

Plaintiff next argues that her move to Maryland was not unilateral because "Defendants made WashU inhospitable." The thrust of this argument appears to be that Defendants should be subject to personal jurisdiction in Maryland because it

38

"was beyond foreseeable that Defendant[s] should have expected Plaintiff would leave Missouri, and that it would not be unreasonable for her, or any other similarly situated Plaintiff, to return to her hometown after being subjected to such heinous discriminatory treatment by Defendants."

This argument misapplies the Supreme Court's personal-jurisdiction jurisprudence. The Supreme Court has repeatedly held that a plaintiff's unilateral activities—like the decision to relocate to particular state—cannot satisfy the minimum-contacts test. *See, e.g.*, *Walden*, 571 U.S at 284; *Helicopteros*, 466 U.S. at 417. The relevant inquiry is not whether a defendant's conduct might foreseeably cause a plaintiff to move to a new forum, but whether the defendant purposefully directed its activities at the forum itself. Even accepting Plaintiff's characterization that Defendants made WashU "inhospitable," this does not turn Plaintiff's decision to move to Maryland into a contact between Defendants and Maryland. The acts giving rise to Plaintiff's claims all took place in Missouri. That these acts may have motivated Plaintiff to leave the state does not connect Defendants to Maryland in a constitutionally significant way.

Plaintiff's argument effectively concedes the jurisdictional point. She contends that she left Missouri precisely because all of the conduct that she complains of occurred there. And ultimately, the decision of where to go was Plaintiff's alone. This is the definition of a "unilateral act," an "act in which there

39

is only one party whose will operates." *Unilateral Act*, Black's Law Dictionary (12th ed. 2024). The district court correctly characterized Plaintiff's relocation as unilateral.

## I. Plaintiff's eighth argument is unintelligible; the district court did not find "evidence of a conspiracy."

Plaintiff's final merits argument consists of a heading and two sentences, which assert that the "district court correctly found evidence of a conspiracy, and the conspiracy should stand despite the district court's error in finding no personal jurisdiction," and that Defendants are engaged in a "tortious conspiracy against Plaintiff" and "made Plaintiff so impoverished that she qualified for food stamps." But the district court did not find "evidence of a conspiracy," and these assertions are not connected with any substantive analysis related to the district court's decision to dismiss her case for lack of personal jurisdiction. Therefore, this argument does not provide a basis for reversal.

## II. The district court did not abuse its discretion in denying Plaintiff's request for jurisdictional discovery.

<u>Standard of Review</u>

The district court's decision to deny Plaintiff's request for jurisdictional discovery is reviewed for an abuse of discretion. *See Carefirst of Maryland, Inc. v. Carefirst Pregnancy Cntrs., Inc.*, 334 F.3d 390, 396, 402-03 (4th Cir. 2003).

\*          \*          \*

40

Finally, Plaintiff takes issue with the district court's denial of her request for jurisdictional discovery. But the district court did not abuse its discretion in denying the request for jurisdictional discovery. In her opposition to Defendants' motion to dismiss, Plaintiff made a perfunctory request for jurisdictional discovery but did not identify the information that she would seek or explain how additional information might establish jurisdiction. The district court subsequently denied the request because Plaintiff did not reference "any particular evidence, generally or specifically, that could alter the Court's determination on personal jurisdiction." The district court also noted that, "[t]o the extent that she requests anything in particular, Brown references the events that transpired in the November 2, 2022 Race and the Law Class, which would not provide evidence relevant to personal jurisdiction." Thus, the district court found that Plaintiff "failed" to meet her "burden to establish a need for jurisdictional discovery." This was not an abuse of discretion. *See Carefirst*, 334 F.3d at 402-03; *ALS Scan, Inc. v. Digit. Serv. Consultants, Inc.*, 293 F.3d 707, 716 n.3 (4th Cir. 2002).

## STATEMENT REGARDING ORAL ARGUMENT

Defendants do not believe that oral argument would aid the Court's decisional process. This matter involves the straightforward application of personal-jurisdiction principles and is therefore amenable to submission on the briefs.

**CONCLUSION**

The judgment of the district court should be affirmed.

Respectfully submitted,

/s/ *Alicia M.S. Pitts*
Alicia M.S. Pitts
SAUL EWING LLC
1001 Fleet Street, 9th Floor
Baltimore, Maryland 21202
alicia.pitts@saul.com
(410) 332-8693

Winthrop B. Reed III
Lindsey M. Bruno
Daniel C. Carter
LEWIS RICE LLC
600 Washington Avenue, Suite
2500 St. Louis, Missouri 63101
wreed@lewisrice.com
lbruno@lewisrice.com
dcarter@lewisrice.com
(314) 444-7600

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 8,221 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).  I further certify that this brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5)-(6) because it has been prepared in proportionally spaced 14-point Times New Roman font using Microsoft Word.

/s/ Alicia M.S. Pitts

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2025, I electronically filed the foregoing document with the Clerk of the United States Court of Appeals for the Fourth Circuit using the CM/ECF system.  I further certify that on September 16, 2025, I served the foregoing document by U.S. Mail, postage prepaid, on

Allison Brown
6405 Chew Road
Upper Marlboro, Maryland 20772.

/s/ Alicia M.S. Pitts