No. 25-1887

(8:24-cv-03198-TDC)

_____

In The

United States Court of Appeals

For the Fourth Circuit

_____

ALLISON BROWN,

Plaintiff-Appellant,

v.

THE WASHINGTON UNIVERSITY, Et al.,

Defendants-Appellees.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

GREENBELT DIVISION

_____

**Combined Petitions for Panel Rehearing and Rehearing En Banc**

_____

Allison Brown

6405 Chew Road

Upper Marlboro, MD 20772

E-mail: asb151@georgetown.edu

# TABLE OF CONTENTS

Table of Contents …………..…………………..…………….……….. 1

Table of Cases and Authorities ……………..…………………..……….. 3

Rule 35.1 Statement………………………………………….…..…………. 4

Introduction………………………………………………..…………....... 5

Background……………………………………………..…………….... 6

Argument………………………………………………..……………...... 7

    I.    The 4th Circuit panel decision conflicts with a decision of the United States Supreme Court, *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351 (2021) ("*Ford*") …..…..…...............….… 8

        a.  Neither the District Court nor the 4th Circuit panel applied *Ford* …... 9

    II.    The 4th Circuit decision conflicts with decisions of the 4th Circuit, *UMG Recordings Inc. v. Kurbanov*, 963 F.3d 344, 352 (4th Cir. 2020) ("*UMG Recordings*") …..…..………………………………….……… 11

        a.  Neither the 4th Circuit panel nor the District Court applied *UMG Recordings* …..…..…………………………………………… 13

    III.    The District Court Failed to Acknowledge Many Facts That Are Relevant to The Determination of Whether The Washington University ("WashU") Is Subject to Personal Jurisdiction in Maryland ………..…………….. 14

        a.  All of WashU's Maryland Activities Are Relevant in Determining Personal Jurisdiction, and the District Court Erred in Determining That Only Maryland Activities Related to the Law School or Certain Programs Were Relevant.…………………..…………….……..… 16

    b.   Appellee WashU's Attempt to Prohibit Maryland Residents From Suing Them Was Not Acknowledged by the District Court nor the 4th Circuit Panel …….………….………….……….………..……….……..…… 18

IV.    This appeal presents two questions of exceptional importance:

    A.  Can Federal Courts Refuse to Apply the Most Recent Supreme Court and 4th Circuit Cases Regarding Personal Jurisdiction over Non-Resident Entities? …….………….………….……………….……………. 19

    B. Can Federal Courts Ignore Facts Relevant to Determining Personal Jurisdiction Over a Non-Resident Defendant by: 1) Ignoring and Facts Relevant to Personal Jurisdiction Determinations, or 2) Acknowledging Facts but Characterizing Them as Irrelevant, Contrary to Federal Case Law? …….………….………….……...……….………. 20

Conclusion ……….…………….………………...…………………………..……… 22

Certification of Compliance ………………………………………..……… 23

# TABLE OF AUTHORITIES

Christine P. Bartholomew & Anya Bernstein, Ford's Underlying Controversy, 99 Wash. U. L. Rev. 1175 (2022).

*Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351(2021)**.**

*Martinez v. N. Arizona Univ*., 553 F. Supp. 3d 908, 919 (D.N.M. 2021).

Samantha Liss *Washington University Restricts Protest and Expression; Critics See Inconsistent Standard*, Pulitzer Ctr. (Dec. 27, 2025), https://pulitzercenter.org/stories/washington-university-restricts-protest-and-expression-critics-see-inconsistent-standard

*UMG Recordings Inc. v. Kurbanov*, 963 F.3d 344, 352 (4th Cir. 2020).

## RULE 35.1 STATEMENT

Please read this record and Combined Petitions for Panel Rehearing and Rehearing En Banc. I express a belief, based on a reasoned and studied professional judgment, that the panel decision is contrary to decisions of the U.S. Supreme Court and the U.S. Court of Appeals for the Fourth Circuit, that re-consideration by the same panel, and consideration by the full court is necessary to secure and maintain uniformity of decisions i.e. the Supreme Court's decision in *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351 (2021), and the 4th Circuit's decision in *UMG Recordings Inc. v. Kurbanov*, 963 F.3d 344, 352 (4th Cir. 2020). Further, the District Court and the 4th Circuit panel decision omitted and ignored facts to erroneously conclude that my relocation to Missouri was unilateral. This case also involves questions of exceptional importance, i.e., whether WashU is subject to personal jurisdiction in Maryland after discriminating and retaliating against me in the state of Maryland, and soliciting over a billion dollars of business/research contracts in Maryland – including those with myself.

Allison Brown

4

**INTRODUCTION**

Appellant files a Combined Petition for Panel Rehearing and Rehearing En Banc because the original panel of the 4th Circuit has erred in **failing to address any of Appellant's facts and arguments raised on appeal**, **and several of Appellant's facts and arguments that were ignored by the District Court**. In Appellant's filings before the 4th Circuit, Appellant has enumerated several different reasons why the District Court and 4th Circuit panel have erred, and why the 4th Circuit panel should reverse the District Court's decision, and hold that exercising personal jurisdiction over WashU would be proper in the District Court of Maryland.

**Every single case cited by the District Court and the 4th Circuit panel** denying jurisdiction **was decided before the most recent and controlling Supreme Court case on personal jurisdiction to date**, *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351(2021) ("*Ford*"). Accordingly, Appellant respectfully requests that the 4th Circuit publish an opinion applying *Ford* to Appellant's claims of personal jurisdiction over Appellees, The Washington University et al.

Further, Appellant, as any other litigant, should not be bound to decisions constituting clear error and based on outdated case law with far less precedential value than 2020 and 2021 4th Circuit and Supreme Court decisions respectively.

5

## BACKGROUND

Black litigants before the 4th Circuit Court of Appeals (such as Appellant Allison Brown in this case) should have the same new and precedential case law applied to their cases as white litigants. Appellant respectfully requests analysis of the facts of this case under this new binding and precedential case law in the Supreme Court and the 4th Circuit Court of Appeals.

Appellant, a Black female lifelong Maryland resident, has been suffering immense harm (such that she is embarrassed to disclose in a public filing) after Appellees have repeatedly reached into the state of Maryland while she attended WashU and performed research and thereafter, to this day, in order to harm her in retaliation for engaging in protected activity under the Civil Rights Act of 1964 and Title IX of the Education Amendments of 1972 by complaining about Appellees' (WashU et al) culture of racism and sexual harassment online.

Appellee WashU is a research and educational institution receiving "billions of dollars in funding and contracts from Maryland universities and Maryland based government agencies such as NIH and NASA, and has dual degree programs with four Maryland universities." (Memo. Opinion at 17.)

Neither the District Court, nor the panel, acknowledged the dispositive facts that would have led the District Court to exercise personal jurisdiction over Appellees under *Ford* and *UMG Recordings*: 1) Appellees (WashU et al)

6

unambiguously instructed Appellant to perform and complete several contracts in the state of Maryland including the remaining two years of her law school education and her employment as a research assistant with Appellee Davis (of which, **Appellant is still employed, has never resigned nor been fired to this day**), 2) Appellees (WashU et al) constructed a release and non-disparagement agreement to bind several Maryland citizens including Appellant, and 3) Appellees (WashU et al) evicted Appellant from her apartment, and 4) threatened Appellant with an unconstitutional warrant for her arrest with the WashU police department as Appellees have a pattern of arresting and battering those who protest against institutional sexism or racism in their employment and educational instruction.[1] Appellees (WashU et al) also lied to the Maryland Board of Law Examiners regarding Appellant's fitness to practice law, and interfered with Appellant's employment contracts to be performed in Maryland at the National Center for Youth Law and the United Nations Permanent Forum for People of African Descent.

**The District Court in their opinion, and the 4th Circuit, by their erroneous determination, never mentioned nor weighed these facts.** Appellant

---

[1] Samantha Liss*Washington University Restricts Protest and Expression; Critics See Inconsistent Standard*, Pulitzer Ctr. (Dec. 27, 2025), https://pulitzercenter.org/stories/washington-university-restricts-protest-and-expression-critics-see-inconsistent-standard

respectfully requests that either the 4th Circuit panel or the 4th Circuit en banc publish an opinion that finds that WashU's extensive engagement with Appellant and Maryland research institutions are relevant in finding that WashU is subject to personal jurisdiction in Maryland.

I.    **The 4th Circuit panel decision conflicts with a decision of the United States Supreme Court,** *Ford Motor Co. v. Montana Eighth Judicial District Court*, **592 U.S. 351 (2021) ("*Ford*")**

*Ford* is the Supreme Court's most recent precedential opinion on personal jurisdiction, and gave lower courts an e*xtensive* footprint to follow in determining personal jurisdiction. As Supreme Court Justice Gorsuch wrote for the 8-0 opinion in *Ford*, "Lower court judges may sometimes disagree with this Court's decision, but they are never free to defy them." *Id*.

In *Ford*, the plaintiffs' only contact with the states of Montana and Minnesota was the fact they were residents that used allegedly defective Ford cars and suffered injuries when the Ford cars malfunctioned in Montana and Minnesota. "We have never framed the specific jurisdiction inquiry as always requiring proof of causation—i.e., proof that the plaintiff's claim came about because of the defendant's in-state conduct." *Id.* at 9. The Supreme Court did not require that the plaintiffs have any ties to Ford's activities within Montana and Minnesota to find Ford's activities relevant to whether Ford was subject to jurisdiction in Montana and Minnesota. **"A different State's courts may yet have jurisdiction, because**

8

**of another 'activity [or] occurrence' involving the defendant that takes place in the State."** *Id. Bristol Myers*, 582 U. S., at \_\_\_, \_\_\_ (slip op., at 6, 7) (quoting *Goodyear*, 564 U.S., at 919) Thus, the Supreme Court found that Ford was subject to jurisdiction in Montana and Minnesota even though the plaintiff had no relationship to Ford's activities establishing jurisdiction because Ford's activities were "related to" the plaintiffs.

The Supreme Court held in *Ford* that a Plaintiff injured by a malfunctioning Ford car could exercise personal jurisdiction in the Appellant's resident state even though the Appellee, Ford, had not designed, manufactured, or sold the Appellant's malfunctioning car in the Appellant's resident state. **"None of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do. As just noted, our most common formulation of the rule demands that the suit 'arise out of _or relate to_ the defendant's contacts with the forum."** *Id.*, at \_\_\_ (slip op., at 5) (quoting Daimler, 571 U. S., at 127; emphasis added; alterations omitted) The Supreme Court held that personal jurisdiction in the Plaintiff's resident state was proper because Plaintiff's claims were "related to" Appellee Ford's contacts in Plaintiff's resident state.

9

**A. Neither the District Court nor the 4ᵗʰ Circuit panel applied *Ford*.**

The 4ᵗʰ Circuit panel and the District Court erred in completely ignoring and failing to apply the most recent seminal court case on personal jurisdiction, *Ford*.

**Every single case cited by the District Court in denying jurisdiction was decided before *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351(2021) ("Ford").** "Here, resident-plaintiffs allege that they suffered in-state injury because of [Ford's] defective products . . .  For all the reasons Appellant has given, the connection between the plaintiffs' claims and Ford's activities in those States— or otherwise said, the 'relationship among the defendant, the forum[s], and the litigation'—is close enough to support specific jurisdiction." *Id*. *Walden*, 571 U. S., at 284 (internal quotation marks omitted). **Neither the District Court, nor the 4th Circuit panel applied the case law of *Ford* to any of Appellant's allegations of in-state injury to exercise personal jurisdiction over Appellees in the state of Maryland. In fact, both the District Court and the 4th Circuit's panel have ignored them. This constitutes clear legal error.** Appellant respectfully requests that the 4th Circuit apply the Supreme Court's finding in *Ford* to the facts of this case and find that the District Court of Maryland should exercise personal jurisdiction over Appellees by the 4ᵗʰ Circuit panel itself or en banc before the 4ᵗʰ Circuit Court of Appeals.

10

In *Ford*, the Supreme Court found that every contact that Ford had in Montana and Minnesota was deemed relevant to the determination of whether Montana and Minnesota courts had personal jurisdiction over Plaintiffs claims against Ford. In contrast**, the District Court found all of Appellees' Maryland contacts irrelevant to the determination of whether Maryland courts had personal jurisdiction over Appellant's claims against Ford.**

If the *Ford* Supreme Court used the same analysis that the District Court did, Ford would not have been subject to personal jurisdiction in Montana and Minnesota because plaintiff's claims did not arise from Ford's contacts. WashU research is WashU research; Appellees harmed Appellant because of Appellant's race and sexual discrimination complaints with regards to her research **and** education. **All of WashU's Maryland contacts and Appellant's injuries in Maryland are relevant to the jurisdictional analysis under *Ford*.** Thus, the District Court's decision is clear legal error under *Ford*.

Accordingly, Appellant respectfully requests that the 4th Circuit follow the *Ford* Supreme Court precedent and find that WashU's research contracts with other Maryland entities are "related to" Appellant's research for WashU under Appellee Davis and support a finding of personal jurisdiction over Appellees in Maryland. **Again, Appellant has a research contract working under Appellee Davis and is currently employed by WashU.** (Appellant's Informal Brief at 15.)

11

## II.    The 4th Circuit decision conflicts with decisions of the 4th Circuit, *UMG Recordings Inc. v. Kurbanov*, 963 F.3d 344, 352 (4th Cir. 2020) ("*UMG Recordings*")

In *UMG Recordings*, the 4th Circuit reversed a Virginia court's dismissal for lack of personal jurisdiction over a Russian website owner who allegedly pirated music illegally through his "stream-ripping" service. The Russian website owner in *UMG Recordings* had never entered Virginia or even the United States and operated his websites entirely from Russia. Yet, the 4th Circuit found personal jurisdiction based on the Russian website owner's advertising practices, which purposefully availed the Russian website owner to personal jurisdiction in Virginia.

Similarly, Appellant respectfully requests that the 4th Circuit find personal jurisdiction over Appellees in Maryland through Appellees' research contracts with Appellant and other Maryland entities, solicitation of contact, and Appellee's intentional discriminatory treatment of Appellant because she complained of race and sex discrimination even though Appellees had limited in-person contact with Appellant in Maryland.

Appellees, the District Court, and the 4th Circuit have all cited old and outdated 4th Circuit case law, *Consulting Eng'rs Corp v. Geometric Ltd.*, 561 F. 3d 273, 278 (4th Cir. 2009), containing the "in the forum state" language requiring Appellees contact with Appellant to be in the forum state, Maryland, to be relevant

12

to determining jurisdiction. (Appellees' Informal Brief at 35.) **This language was removed in *UMG Recordings Inc. v. Kurbanov*, 963 F.3d 344, 352 (4th Cir. 2020) ("*UMG Recordings*")**

In newer 4th Circuit case law, *UMG Recordings, Inc.*, 963 F. 3d 344 (4th Circuit 2020), the 4th Circuit listed the 6th factor in determining purposeful availment as "whether the defendant made in-person contact with a resident of the State regarding the business relationship." *Id*.  There is no requirement that the contact with the resident happen in the forum state. Thus, the District Court and the 4th Circuit panel finding - that all of Appellees' actions against Appellant were irrelevant because they did not occur in Maryland – was clear legal error.

### A. Neither the 4th Circuit panel nor the District Court applied *UMG Recordings.*

Neither the 4th Circuit panel decision nor the District Court of Maryland applied nor followed existing Fourth Circuit precedent. "Essentially all of the work that Kurbanov has performed on the Websites has been performed in Russia, and he has never performed any work on the Websites from within the United States. . . In sum, we conclude Kurbanov's contacts with Virginia are quantitatively and qualitatively sufficient to demonstrate that he purposefully availed himself of the privilege of conducting business here." *Id* at 5. *UMG Recordings* elucidated the fact that **it does not matter whether a Defendant makes in-person contact with a Plaintiff in the forum state in order to exercise personal jurisdiction over a**

13

**non-resident Defendant.** *UMG Recordings* held that the only relevant analysis is if the effects were felt in the forum state. Accordingly, the District Court and the 4th Circuit panel's determination that there was no contact or basis to exercise jurisdiction over Appellees was clear legal error.

The District Court and the 4th Circuit panel should have found that all of Appellees' contacts with Appellant were relevant, whether occurring in Missouri or Maryland, and formed sufficient basis for exercising personal jurisdiction over Appellees in the state of Maryland.

### III. The District Court Failed to Acknowledge Many Facts That Are Relevant to The Determination of Whether The Washington University Is Subject to Personal Jurisdiction in Maryland

The panel and the District Court have both failed to recognize several key factual errors of the District Court: that several of Appellant's relevant contracts were interfered with and expected to be performed in Maryland: the release of all claims binding several Maryland citizens, the non-disparagement agreement binding Appellant, a Maryland citizen, Appellant's employment contracts with the National Center for Youth Law and the UN Permanent Forum for People of African Descent in Maryland, and finding that the vast majority of the Defendant WashU's tortious conduct underlying Appellant's claims occurred in Missouri, when they impacted Appellant in Maryland, New York, and Pennsylvania, and Washington D.C.

14

The Memorandum Opinion from the District Court also erred when they made the erroneous factual error that "Brown has provided no specific facts demonstrating that WashU purposefully required her to reside there during her temporary suspension." Appellees threatened Appellant with arrest, and said that Appellant could neither attend a showing of Black Panther at an off-campus, local AMC movie theater, nor maintain residence in her apartment pursuant to the Washington University Police Department's Off-Campus patrol zone. (ECF 48, Exhibit 77) Because Appellant's apartment was in WashU police department's patrol zone, and the WashU police department has instituted an unconstitutional practice called "Wanteds" which allows the detention of anyone without probable cause or reasonable suspicion, Appellant was constructively evicted from her apartment, and fled the state of Missouri for her safety. (Brown v. Washington Univ., No. 25-1887, ECF No. 27 at 46 (4th Cir. Sept. 26, 2025). **Both the 4ᵗʰ Circuit panel and the District Court ignored these facts in their jurisdictional analysis.**

Additionally, the 4ᵗʰ Circuit and the District Court erred in finding that Appellant's move to Maryland was unilateral, finding there were no contacts upon which to base a finding of personal jurisdiction over Defendants Davis, Katz, Osgood, and Kamimura-Jimenez, and not granting jurisdictional discovery before dismissing Appellant's claims for lack of personal jurisdiction (Memorandum Op.

at 13). For these reasons, Appellant respectfully requests that the 4th Circuit panel and en banc weigh these additional facts for the 4th Circuit to reverse and remand this case back to the District Court of Maryland.

### A. All of The Washington University's Maryland Activities are Relevant in Determining Personal Jurisdiction, and The District Court Erred in Determining that only Maryland Activities Related to the Law School or Certain Programs were Relevant

The District Court and the 4th Circuit panel erred in finding that WashU's extensive activity in Maryland was irrelevant because "Brown's claims did not [arise] out of these general contacts." (Memo. Opinion at 17.) Under *Ford*, WashU's engagement with NIH, NASA, Johns Hopkins and other Maryland entities would all be relevant in determining whether Maryland had jurisdiction over WashU because Brown's claims did not have to "arise from" but simply had to be "related to" WashU's extensive contacts. *Walden v. Fiore*, 571 U.S. 277, 285 (2014) ("[Courts] have upheld the assertion of jurisdiction over defendants who have purposefully 'reach[ed] out beyond' their State and into another . . . ." (*Ford* citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479–80 (1985). Further, the 4th Circuit panel and the District Court erred in claiming that Appellant's claims do not relate to WashU's Maryland contacts related to research funding and dual degree programs. **Appellant is a current research assistant of Appellee Adrienne Davis who has never been fired or resigned.** WashU's general activities relating to contracts with Maryland universities or federal government

16

agencies, and individual Maryland citizens that WashU hires as researchers are inextricably intertwined with Appellant's (a Maryland-based WashU researcher) claims. Thus, WashU's engagement with Maryland entities such as the National Institutes of Health ("NIH") and lying to the Maryland Bar about Appellant is very relevant to the analysis.

The District Court and the 4th Circuit panel also failed to acknowledge the fact that Appellant Allison Brown holds one of WashU's innumerable research contracts with Maryland entities (i.e. NIH, NASA, and Johns Hopkins), which, in their totality, are worth billions of dollars. This is analogous to the Plaintiff in Ford owning one of Ford's cars, which was part of the millions of dollars in inventory in Montana and Minnesota. Appellees' contacts with Appellant, their researcher who paid taxes to the state of Maryland on her grant, worked from Maryland as a student, and as an employee. **These contacts are deeply related to the focal point of the harm that she alleges occurred in the state of Maryland, from December 2022 to the present.**

The District Court also erred in finding that WashU's extensive contacts with Maryland entities were not relevant to Brown's claim for personal jurisdiction because those contacts did not have anything to do with the "law school generally or any program in which she participated specifically." (Memorandum Opinion at 17.) **Neither the law school nor the programs Brown participated in are legal**

17

**entities. It is clear legal error for the 4th Circuit and the District Court to hold that the only contacts of a non-legal entity, Wash U Law, matter, and the contacts of The Washington University ("WashU"), a legal entity, does not matter.** The contacts of Washington University, i.e. WashU do matter. *See Martinez v. N. Arizona Univ.*, 553 F. Supp. 3d 908, 919 (D.N.M. 2021) **The 4th Circuit and the District Court under *UMG Recordings* and *Ford* are supposed to use the entire entity's (WashU) contacts to perform the personal jurisdiction analysis.** Thus, the District Court committed clear legal error, and the 4th Circuit panel erred in issuing an unpublished opinion supporting the same in determining that only actions as part of WashU Law, a non-jural entity, were relevant in determining jurisdiction.

### B. WashU's Attempt to Prohibit Maryland Residents from Suing Appellees Were Not Acknowledged by the District Court or the 4th Circuit Panel

Further, both the 4th Circuit panel and the District Court failed to acknowledge several of Appellant's facts: namely, those regarding the release of all claims and the non-disparagement agreement that WashU coerced Appellant to sign to complete her law degree from Appellees.

Appellant's movement to Maryland was not unilateral. As the District Court of Maryland correctly notes, Appellees refused to give assurances that they would

18

stop discriminating against Appellant or that she would not be arrested, harmed, imprisoned, or possibly killed if she were to return to WashU. (Memo. Op. at 9.)

No reasonable person would stay in St. Louis, one of the most dangerous cities in the country, under Appellees' conditions or indefinite suspension. It is inconceivable for Appellees to believe it would be reasonable for Appellant, a Black woman, to stay or litigate under these dangerous conditions after Appellees Wild, Walsh, and Gore accused and threatened Appellant with arrest and detainment in the St. Louis jail (where 18 people died in 2024) with no corroborative evidence to support the same.

**IV. This appeal presents two questions of exceptional importance:**
  **A. Can Federal Courts Refuse to Apply the Most Recent Supreme Court and 4th Circuit Cases Regarding Personal Jurisdiction over Non-Resident Entities?**

This appeal presents a question of exceptional importance: Black students' due process rights are at risk if the District Court and 4th Circuit refuse to apply existing and precedential case law by acknowledging a University's contacts with Maryland after students have been evicted and threatened with unlawful arrest in retaliation for engaging in protected activity under Title VI and Title VII of the Civil Rights Act of 1964.

Appellant respectfully requests relief from the District Court dismissal of her Complaint for lack of personal jurisdiction because Appellees have purposefully availed themselves to the state of Maryland under *Ford* and *UMG Recordings*

19

through their brokering of agreements with Appellant and other Maryland entities, interfering with contracts to be performed in the state of Maryland, causing tortious injury in the state of Maryland, and requiring Appellant to relocate to the state of Maryland for her safety under threat of arrest by Appellees.

**B. Can Federal Courts Ignore Facts Relevant to Determining Personal Jurisdiction Over a Non-Resident Defendant by: 1) Ignoring and Facts Relevant to Personal Jurisdiction Determinations, or 2) Acknowledging Facts but Characterizing Them as Irrelevant, Contrary to Federal Case Law?**

None of the cases cited by the 4th Circuit panel, nor the District Court found that the Defendants made its home jurisdiction so racially intolerant, inhospitable, and dangerous to a Plaintiff **where the Plaintiff requested to stay, but then was requested to leave the Defendants' home jurisdiction by the Defendants themselves.** Thus, it was foreseeable to Appellees (WashU et al) that Appellant would relocate to Maryland, where the only address that Appellees possessed and sent numerous correspondence regarding Appellant's suspension, would relocate upon threat of arrest by Appellees and constructive eviction from Appellant's off-campus apartment after Appellant was forbidden from attending an off-campus movie event at a local AMC movie theater.

In fact, Appellant left Missouri in December 2022 leaving all of her belongings and has not returned to Missouri since. Instead of returning to retrieve her belongings when her lease ended in Summer 2023, Appellant had a friend enter

20

her apartment and sort her belongings. The thought of entering Missouri terrifies Appellant and she has no intention of ever doing the same.

Appellant respectfully requests that this case is remanded to the District Court of Maryland at Greenbelt due to her indigent status (she receives Maryland food-stamps) and inability to travel to Missouri to litigate these claims against a billion-dollar institution with four lawyers, two law firms, and a police force who has intentionally and foreseeably caused her impoverishment and trauma through their myriad discriminatory and retaliatory actions for complaining of race and sex discrimination.

**CONCLUSION**

Appellant respectfully asserts that she has satisfied the requirements for granting a rehearing/hearing en banc and that the District Court did not follow legal precedent by failing to apply Supreme Court and 4th Circuit case law. Further, the District Court and 4th Circuit panel committed clear error in interpreting facts, and it is of utmost importance for the 4th Circuit to protect protected persons from suffering discrimination at universities by granting personal jurisdiction over WashU under *Ford* and *UMG Recordings*.[2] If the 4th Circuit is unable to understand Appellant's pleadings, Appellant respectfully requests that the 4th Circuit appoint a lawyer to represent Appellant, a pro se litigant, to argue on her behalf instead of concluding that there is no basis for her claims.

---

[2] Even Appellee's law review would agree and published an article supporting the same. "Personal jurisdiction is, fundamentally, about access to justice. Understanding a claim to mean the underlying controversy, as *Ford* demands, begins to right this wrong." Christine P. Bartholomew & Anya Bernstein, Ford's Underlying Controversy, 99 Wash. U. L. Rev. 1175 (2022).

## CERTIFICATE OF COMPLIANCE

**I certify that this brief** does not exceed 3,900 words (15 pages if

typewritten or handwritten) under Rule 32(g)(1) and Fed. R. App. P.40(d)(2)-(3).

Allison Brown